506

Argued and submitted February 2, affirmed in part, reversed in part June 15, 1983

In the Matter of the Marriage of

FENN,
*Appellant,*
*and*
FENN,
*Respondent.*

(15-81-07001; CA A24601)
(Consolidated Cases)

664 P2d 1143

Jon A. Joseph, Eugene, argued the cause and filed the brief for appellant.

Charles S. Spinner, Eugene, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

NEWMAN, J.

Van Hoomissen, J., concurring.

## NEWMAN, J.

This is a dispute over custody of the parties' daughter, now seven years old. The marriage of mother and father was dissolved on November 15, 1979. The dissolution decree awarded joint custody of the child. On December 31, 1981, a Texas district court, on mother's petition, purported to modify the dissolution decree to award custody to mother. A proceeding was then pending in Lane County on father's petition to award him custody. Mother seized the child from father in Oregon in February, 1982, and left the state. On April 25, 1982, the Lane County Circuit Court, on father's petition, modified the dissolution decree and awarded custody to father. Mother is presently in contempt of the Lane County modification order. The current location of mother and child is unknown.

Mother argues that the trial court erred in (1) denying her motion to dismiss father's proceeding for change of custody and continuing to exercise jurisdiction over the custody proceeding; (2) failing to give full faith and credit to the Texas modification decree of December 31, 1981; and (3) awarding father attorney fees, costs and disbursements. We affirm as to the custody order and reverse as to the attorney fees, costs and disbursements.

The parties married in Texas in 1971. The child was born in 1976 in Arkansas. In August, 1978, the family moved to Eugene. Following the dissolution decree mother and father agreed on the periods of time the child would live with each parent. From the time of the decree to March 17, 1980, she lived in Eugene with father; from March 18, 1980, to April 28, 1980, she lived in California with mother; from April 28 to June 20, 1980, she lived in Eugene with father. On June 20, the child went to visit mother in California. She was to return to father in Oregon in December. Without father's consent or knowledge, mother moved to Texas on September 20, 1980, with her new husband and the child.

On December 9, 1980, mother filed for modification of the Oregon dissolution decree in the Texas district court, asking that custody be transferred to her. Father arrived in Texas on December 16, 1980, but mother refused to let him see the child. On December 18, 1980, father took the child from school without mother's knowledge or consent and, after informing mother that he had taken custody in accordance with their

prior agreement, returned to Eugene. On arrival, father was attacked by mother and her new husband, who took the child back to Texas.

On December 24, 1980, father moved to modify the dissolution decree in the Lane County Circuit Court and asked for custody of the child. On January 23, 1981, mother moved to dismiss father's proceeding, asserting (1) that Oregon did not have jurisdiction pursuant to ORS 109.730; (2) that Oregon did not have jurisdiction because custody proceedings were pending in Texas; and (3) that Oregon was an inconvenient forum. In February, 1981, the court denied mother's motion, stating that (1) under the terms of the dissolution decree, Oregon had continuing jurisdiction to modify custody; (2) Oregon could exercise its jurisdiction, even though there was a petition pending in Texas, because Texas was not "exercising jurisdiction substantially in conformity" with the Uniform Child Custody Jurisdiction Act (UCCJA); and (3) the child and her parents presently have a "significant connection" with Oregon and that "there is available in this state substantial evidence concerning the child's present or future care * * *."

The court awarded custody to mother during the pendency of the proceedings, subject to visitation rights in father. Mother prevented father from exercising visitation rights. Father asked that mother be held in contempt and requested that temporary custody be transferred to him. Mother appeared in person at the Lane County hearing. In October, 1981, the court granted father temporary custody and held mother in contempt. Mother returned the child to father in Eugene on November 12, 1981.

On December 31, 1981, the Texas court awarded custody to mother, subject to visitation rights in father. On February 4, 1982, mother and an unidentified man took the child from school in Eugene, assaulting a school administrator in the process. Subsequently, mother was indicted in Lane County for custodial interference. She is presently a fugitive, and Texas has issued a warrant for her arrest.

Following a hearing at which mother appeared through her counsel, the Lane County Circuit Court modified

the dissolution decree and awarded father custody, subject to visitation rights in mother.[1]

Mother's first assignment of error requires us to interpret sections 3 (ORS 109.730), 6 (ORS 109.760) and 14 (ORS 109.840(1)) of the UCCJA. The question is: Did Lane County properly exercise its jurisdiction to modify its dissolution decree when at the time father filed his petition in Lane County a custody proceeding was pending in Texas?

Oregon had jurisdiction to modify the dissolution decree under ORS 109.730(1)(b), which provides:

"(1)   A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"* * * * *

"(b)   It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships * * *."

Texas, although it has not adopted the UCCJA, also had jurisdiction under a similar provision of Texas Family Code § 11.045 (2)(A).[2]

ORS 109.760(1) provides:

"A court of this state shall not exercise its jurisdiction under ORS 109.700 to 109.930 if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction *substantially in conformity with ORS 109.700 to 109.930,* unless the proceeding is stayed by the court of the other state because

---

[1] The modification order also provided:

"Given the status of various criminal and civil proceedings involving the parties herein, it is appropriate that visitation and child support be determined after further consideration based on information provided by the parties, including a Uniform Support Affidavit as well as any additional testimony and argument which the parties may want to present on those issues."

[2] Although Texas has enacted some provisions similar to the UCCJA, it has not adopted the entire Act. As the Supreme Court noted in *Grubs v. Ross,* 291 Or 263, 274 n 14, 630 P2d 353 (1981), the fact that Texas has enacted the UCCJA is not important to the analysis.

this state is a more appropriate forum or for other reasons." (Emphasis supplied.)

If Texas exercised its jurisidiction "substantially in conformity" with the UCCJA, the Lane County Circuit Court should have declined to exercise its jurisdiction.

ORS 109.840(1) provides:

"If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court which rendered the decree does not now have jurisdiction *under jurisdictional prerequisites substantially in accordance with ORS 109.700 to 109.930* or has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction." (Emphasis supplied.)

The Lane County Circuit Court correctly held that Texas did not exercise modification jurisdiction "substantially in conformity" with the UCCJA because Oregon, at the time mother filed her petition in Texas in December, 1980, continued to have jurisdiction "* * * under jurisdictional prerequisites substantially in accordance with [the UCCJA]." *Grubs v. Ross,* 291 Or 263, 273, 630 P2d 353 (1981).

■        The determinative jurisdictional factors under ORS 109.730(1)(b) (section 3 of the UCCJA) are:

1.   The child and at least one contestant must have a significant connection with the state whose jurisdiction is at issue; *and*

2.   There must be available, in the state whose jurisdiction is at issue 'substantial evidence concerning the child's present or future care, protection, training, and personal relationship.'

When the modification petition was filed in Texas in December, 1980, father had lived and worked in Oregon for over three years; Oregon was the last state where father, mother and child had lived together as a family; and the original dissolution decree was entered in Oregon. The child had lived in Oregon for 23 months and had begun school here; teachers and friends were available in Oregon to testify. The only witnesses who knew and observed the family were in Oregon and were not available in Texas. Father and child have had a "significant connection" with Oregon, and "substantial

evidence" concerning the child's present and future care was available in Oregon. Accordingly, Texas's refusal to defer to the continuing jurisdiction of Oregon was not "substantially in conformity" with the Act.[3]

■■     Mother's assertion that Oregon should have declined jurisdiction because Oregon is an "inconvenient forum" within the meaning of ORS 109.770(1) and Texas is "a more appropriate forum" is without merit. Neither do the facts indicate that father has engaged in conduct that would make it "just and proper under the circumstances" for Oregon to decline to exercise jurisdiction under ORS 109.780(1). We hold that the trial court did not err in denying mother's motion to dismiss.

■     Mother's second assignment of error is also without merit. Article IV, section 1 of the United States Constitution does not require Oregon to give full faith and credit to the Texas modification decree of December 31, 1981. When Texas entered its decree on December 31, 1981, mother was contesting father's Oregon petition to modify the dissolution decree, and the child was temporarily with father in Eugene pursuant to the October, 1981, order. For purposes of the Full Faith and Credit Clause, it is not determinative that mother had filed her proceeding in Texas two weeks before father filed his proceeding in Lane County or that mother had moved to dismiss father's proceeding in Lane County because the Texas proceeding was then pending. On December 31, 1981, when Texas purported to modify the dissolution decree, Oregon was continuing to exercise jurisdiction to modify the decree. The Full Faith and Credit Clause did not require Oregon to subordinate its interests in the welfare of the child to the claimed interests of Texas.[4]

---

[3] This interpretation of sections 3, 6 and 14 supports the general purpose of the UCCJA as set forth in ORS 109.720(1)(a), *i.e.,* to avoid jurisdictional competition and conflict and to deter abduction of children.

[4] It remains unclear whether, and to what extent, the full faith and credit clause applies to custody decrees. *Grubs v. Ross, supra,* 291 Or at 267 n 1; *see also* Frankfurter, J., dissenting, in *Kovacs v. Brewer,* 356 US 604, 609, 78 S Ct 963, 2 L Ed 2d 1008 (1958); Frankfurter, J., concurring, in *May v. Anderson,* 345 US 528, 535, 73 S Ct 840, 97 L Ed 1221 (1953); *Halvey v. Halvey,* 330 US 610, 67 S Ct 903, 91 L Ed 1133 (1947); Restatement (Second) Conflict of Laws, § 79, *comment b* (1971). Restatement (Second) Conflict of Laws, § 103 states:

"A judgment rendered in one State of the United States need not be recognized or enforced in a sister State if such recognition or enforcement is not

Mother's third assignment of error is well taken. The final Oregon order of custody was entered on April 23, 1982. Pursuant to stipulation of the parties, paragraph 4 thereof provided:

> "The Court shall take the issue of an award of attorney's fees and costs to Respondent under advisement and counsel for Respondent shall submit an Affidavit of costs and attorney's fees incurred subsequent to September 23, 1981 in this matter and shall separately segregate any attorney's fees or costs incurred by Respondent in the State of Texas. Said Affidavit shall be submitted within ten (10) days of the date of this Order and Petitioner shall have an opportunity to be heard if the amounts are opposed."

Mother filed her notice of appeal on May 10, 1982. On June 7, 1982, the trial court entered judgment awarding father attorney's fees of $2,000 and costs and disbursements of $191.25. Mother filed her notice of appeal therefrom on June 30, 1982.

■ Because mother had already filed her notice of appeal from the final order of custody of April 23, 1982, the trial court lacked jurisdiction to enter the judgment on June 7, 1982. *Truax and Truax,* 62 Or App 130, 659 P2d 983 (1983).

Affirmed as to the custody order; reversed as to the judgment for attorney fees, costs and disbursements. Costs to respondent.

**VAN HOOMISSEN,** concurring.

I agree with the majority's result. However, I write to observe that a good case can be made for dismissing mother's appeal on our own motion. *See Gratreak v. North Pacific Lumber Co.,* 45 Or App 571, 576-77, 609 P2d 375, *rev den* 289 Or 373 (1980).

The maxim that one who comes into equity must come with clean hands is applicable in domestic relations cases. *Parks v. Parks,* 182 Or 322, 329, 187 P2d 145 (1947); *Hollingworth v. Hollingworth,* 173 Or 286, 292, 145 P2d 466 (1944). The dissolution decree awarded joint custody of the

---

required by the national policy of full faith and credit because it would involve an improper interference with important interests of the sister State."

parties' child. Without father's knowledge or consent, mother moved the child from California to Texas. When he went to Texas to see the child, she refused him visitation. When, in accordance with the parties' prior agreement, he took physical custody of the child and returned her to Eugene, mother and her new husband came to Eugene, attacked father and returned the child to Texas.

When father moved in the circuit court to modify the custody provisions of the parties' decree, mother appeared to contest that motion. At that time, the circuit court awarded her temporary custody of the child subject to father's visitation. Thereafter, she prevented father from visitation. Father then asked that she be held in contempt and that temporary custody be changed to him. Mother appeared at that hearing. The circuit court found her in contempt and gave temporary custody to father. Mother then returned the child to father. Thereafter, mother and an unidentified man took the child from her school in Eugene, after assaulting a school administrator. Mother was subsequently indicted in Lane County for custodial interference. Warrants have been issued for her arrest in Oregon and Texas. The present location of mother and child is unknown.

The reason I agree with the majority's result is that father must still locate and secure physical custody of the child. I believe that the courts of other states will give greater weight to a decision by this court *on the merits* than they might give to a decision dismissing mother's appeal.