Argued and submitted August 15, 2001, reversed and remanded June 5, 2002

Murray L. BLACK;
Melrhea E. Black;
Jack Boersma and Barbara J. Boersma,
as Trustees for the Boersma Family Trust;
J.K. (Kelly) Hola; Jeannie Hola;
Albert F. Laurie and Marlene D. Laurie,
as Trustees of the A. F. Laurie Trust;
Donald J. Meis and Nadine E. Meis,
as Trustees for the Meis Family Trust Uta 8/22/95;
Joel E. Colley; Mickell A. Colley; Richard Meloy;
Seattle ATC Partnership,
a Partnership consisting of
David Andrews, John Mitchell,
Thomas Parks, Donald Stobie, and Gerald Traynor,
*Plaintiffs,*

*and*

John J. LENAHAN;
Marilyn S. Lenahan;
Willowrun, L.P.,
an Oregon limited partnership,
*Appellants,*

*v.*

Gary H. ARIZALA;
Quentin L. Breen; Breen Family Trust;
John Duffy; Anthony Easton; Susan D. Easton;
SDE Trust; Frank R. Goldstein; Ed Janowski;
Javier O. Lamoso; Morgan, Lewis & Bockius, LLP,
a Limited Liability Partnership;
Fred H. Martinez; Theresa Miller;
Margaret W.M. Minnich; Lawrence Odell;
James T. Perry; Mohammad Rahman;
Romulus Corporation,
a Delaware Corporation;
Romulus Telecommunications, Inc.,
a Puerto Rico Corporation;
Romulus Engineering, Inc.,
a Delaware Corporation;

Unicom Corporation,
a Puerto Rico Corporation;
Supertel Communications Corporation,
a Puerto Rico Corporation;
and Clearcomm L.P.,
a Delaware limited partnership,
formerly known as PCS 2000, L.P.,
*Respondents.*

BROWN AND BOSTON PCS 2000,
a partnership consisting of Conrad Brown
and Nixon Ray Boston; Kenneth Brown,
as Trustee for the Brown Family Trust;
William Sean Conway; Lisa M. Conway;
Greg Downing; Donald F. Escher and Shirley P. Escher,
Trustees for the Escher Daughters Trust;
Harvey A. Gilbert and Deanne E. Gilbert,
as Trustees for the Gilbert Family Trust;
Kurt Gruen; Reyna Gruen; Joseph M. Ha;
John F. Johnson and Anne R. Johnson,
Trustees for the John F. and Anne R. Johnson Trust;
Harold E. Jones,
as Trustee for the Harold E. Jones
Profit Sharing Trust;
Virginia J. Jones; Caroline B. Kazmann,
Trustee for the Belle M. Beem Trust;
Hollis Kazmann; Ingrid Kluk;
Knoxville IVDS Group,
a Partnership consisting of
Robert Seaman and Others; Donald C. Linkem;
Donald J. Meis; Nadine E. Meis; Edmund J. Mooney,
Trustee for the Edmund J. Mooney Trust;
J. Ray O'Connor and Maurine O'Connor,
Trustees for the J. Ray O'Connor Revocable Family Trust;
Bill Ohman; Colleen Ohman; James Popa;
RPM2 Group Limited Partnership,
a Partnership consisting of Michael Suenram,
Pamela Suenram, Melburn E. Suenram,
and Rose M. Suenram; Nancy L. Ryan;
the Estate of Arthur J. Ryan; S & L Properties,
a Partnership consisting of Douglas A. Shinstine
and Eric A. Luther; Elizabeth J. Seaman;

Shelley A. McCoy; Ralph L. Stean,
Trustee for the Ralph L. Stean Revocable Living Trust
U/A April 14, 1992; James F. Stengel,
Trustee for the James F. Stengel Living Trust dated 9/28/94;
Gretchen B. Stengel,
Trustee for the Gretchen B. Stengel Living Trust dated 9/28/94;
and Russell S. Wunschel,
*Plaintiffs,*

*v.*

Gary H. ARIZALA;
Quentin L. Breen; Breen Family Trust;
John J. Duffy; Anthony Easton; Susan D. Easton;
SDE Trust; Frank R. Goldstein; Ed Janowski;
Javier O. Lamoso; Morgan, Lewis & Bockius, LLP,
a limited liability partnership;
Fred H. Martinez; Theresa Miller;
Margaret W.M. Minnich; Gary North; Lawrence Odell;
James T. Perry; Mohammad Rahman;
Romulus Corporation,
a Delaware corporation;
Romulus Telecommunications, Inc.,
a Puerto Rico corporation;
Romulus Engineering, Inc.,
a Delaware corporation;
Wireless Express Limited Partnership,
a Delaware limited partnership,
fka IVDS Auction Consortium Limited Partnership;
IVDS Management, Inc.,
a Delaware corporation;
Unicom Corporation,
a Puerto Rico corporation;
Supertel Communications Corporation,
a Puerto Rico corporation;
and Clearcomm L.P.,
a Delaware limited partnership,
fka PCS 2000 L.P.,
*Defendants,*

*and*

ROMULUS ENGINEERING (MAS) INC.,
a Delaware corporation;
Datalink Network, Inc.,
a purported corporation;
Romulus Engineering (IVD), Inc.,
a Delaware corporation,
*Defendants - Respondents.*

9611-09017; 9708-06851; A104791

48 P3d 843

Helen T. Dziuba argued the cause for appellants John J. Lenahan, Marilyn S. Lenahan, and WillowRun, L.P. On the briefs were Roger K. Harris and Harris Berne Christensen LLP.

Darleen Darnall argued the cause for respondents Gary H. Arizala, Javier O. Lamoso, Fred H. Martinez, Margaret W.M. Minnich, Lawrence Odell, James T. Perry, Mohammad Rahman, SuperTel Communications Corp., Unicom Corporation, and ClearComm L.P., fka PCS 2000, L.P. Joining in this brief are Joseph C. Arellano and Kennedy Watts Arellano & Ricks L.L.P. for respondent Anthony Easton; Bruce L. Campbell, Thomas C. Sand, and Miller Nash Wiener Hager & Carlsen LLP for respondents Morgan, Lewis & Bockius, LLP and Frank R. Goldstein; Steven K. Blackhurst, and Ater Wynne Hewitt Dodson & Skerritt for respondents Quentin L. Breen, Breen Family Trust, Romulus Corporation, Romulus Telecommunications, Inc., Romulus Engineering, Inc., Romulus Engineering (MAS), Inc., DataLink Network, Inc., and Romulus Engineering (IVD), Inc.; and, Michael D. Kennedy and Kennedy Bowles, P.C., for respondents John J. Duffy, Theresa Miller, and Ed

▌▌▌▌▌▌

Janowski. Darleen Darnall and Davis Wright Tremaine LLP filed the reply brief for respondents Gary H. Arizala, Javier O. Lamoso, Fred H. Martinez, Margaret W.M. Minnich, Lawrence Odell, James T. Perry, Mohammad Rahman, SuperTel Communications Corp., Unicom Corporation, and ClearComm L.P., fka PCS 2000, L.P.

No appearance for respondents Susan D. Easton, SDE Trust, and Gary North.

Before Armstrong, Presiding Judge, and Edmonds* and Kistler, Judges.

EDMONDS, J.

▌▌▌▌▌▌▌▌▌

Armstrong, P. J., concurring.

---

\* Edmonds, J., *vice* Warren, S. J.

### EDMONDS, J.

Plaintiffs John J. Lenahan, Marilyn S. Lenahan, and Willowrun, L.P. (plaintiffs), appeal from a judgment dismissing their claims for security law violations and related torts on the ground that a forum selection clause in a limited partnership agreement required them to bring the case in Puerto Rico.[1] We reverse.

The consolidated cases involve investments in one or more of several related enterprises whose purpose is to seek the award of radio communication frequencies from the Federal Communications Commission for use in data transfer and other communications businesses. Plaintiffs, who are Oregon residents, are parties to only one of the cases, *Black v. Arizala.* That case involves their investment in PCS 2000, L.P. (PCS), a Delaware limited partnership whose headquarters are in San Juan, Puerto Rico.[2] In their first amended complaint, plaintiffs allege that, in the process of selling limited partnership interests in PCS, defendants violated the federal securities laws and the securities laws of Oregon and several other jurisdictions; committed common-law fraud; and violated the Oregon Racketeer Influenced and Corrupt Organization Act (ORICO), ORS 166.715 to ORS 166.735.

Plaintiffs invested in PCS by purchasing limited partnership interests. As part of the purchase, they became parties to the PCS Agreement of Limited Partnership (the Agreement). All of their claims in this case are based on events that occurred before they purchased those interests and became parties to the Agreement. Among other things, plaintiffs allege that defendants represented that PCS could buy licenses from the FCC at a certain price when defendants in fact did not know what the price would be; did not disclose the cost of engineering, acquiring, and installing the necessary equipment; did not disclose the risk of losing the licenses

[1] This appeal originally involved numerous other plaintiffs in two cases that the trial court consolidated. After briefing, all of the other appealing plaintiffs, except for Joseph M. Ha, reached a settlement with defendants, and we dismissed the appeals. Ha has not appeared on appeal, and we dismissed the appeal as to him for want of prosecution.

[2] PCS has since changed its name to Clearcom, L.P. We refer to it by its original name, which it used at the time of the events about which plaintiffs complain.

if PCS failed to raise sufficient capital or to build the infrastructure within the required times; did not disclose that two principal promoters had been involved in previous unsuccessful transactions in the telecommunications industry and had defaulted on guarantees to equipment suppliers, creating a risk that it would be more difficult for PCS to raise capital; and did not disclose the increased costs and disadvantages of the technology that PCS would use in comparison to conventional cellular telephones.

The trial court dismissed the case based on the choice of law, forum selection, and arbitration clause of the Agreement. That clause provides:

> "This Agreement shall be construed and enforced in accordance with and governed by the law of the State of Delaware, excluding that body of law relating to conflicts of law. Any dispute under this Agreement shall be submitted to binding arbitration in San Juan, Puerto Rico under the rules of the American Arbitration Association concerning commercial disputes, and the parties agree to be bound by any decision reached under such rules. Any arbitrator shall be specifically bound by the provisions respecting limitation of liability set forth in this Agreement. Venue for any legal action arising from this Agreement, including enforcement of any arbitration award, shall be in San Juan, Puerto Rico."

Although this clause appears to provide for arbitration as the primary method of resolving disputes under the Agreement, defendants did not ask the court to order plaintiffs to arbitrate their claims. Rather, they relied on the final sentence, which establishes venue "for any legal action arising from this Agreement" in Puerto Rico. They argued that that sentence required plaintiffs to bring this action in Puerto Rico, not in Oregon. The trial court agreed and dismissed the case.

The threshold issue concerns our standard of review. that standard depends on the nature of defendants' motion, about which the parties disagree. On appeal, plaintiffs argue,

> "Defendant[s] called [their] motion a Rule 21 motion, but it is not. ORCP 21 does not contain a motion to dismiss based on an arbitration/venue clause in a contract between the

parties. Because defendants submitted, and the trial court relied on, facts that do not appear on the face of the [complaints], the motion to dismiss was really a motion for summary judgment."

Defendants counter,

"ORCP 21A authorizes the trial court to determine facts relating to personal jurisdiction on a motion to dismiss. This court has applied that rule to review of a dismissal that turned on interpretation for a forum selection clause. Where the trial court has granted such a motion to dismiss, this Court assumes that the trial court made the necessary findings of fact to reach that conclusion. This Court reviews the trial court's assumed factual findings for 'any competent evidence' and its legal conclusions for errors of law." (Footnotes omitted.)

Defendants rely on *Industrial Leasing Corp. v. Miami Ice Machine Co.*, 126 Or App 80, 867 P2d 548 (1994), in support of their argument about our standard of review. In that case, the plaintiff appealed from a judgment dismissing its complaint for lack of personal jurisdiction under ORCP 21 A(2). The plaintiff was in the business of leasing equipment and purchasing lessors' interests in equipment leases. It entered into an agreement that contained a forum selection clause to obtain the assignment of the defendant's lessor's interest in an equipment lease. When the lessee failed to make the payments under the lease, the plaintiff made a demand that the defendant repurchase the lease in accordance with the terms of the assignment. The defendant moved to dismiss under ORCP 21 A(2), arguing that it had never done business in Oregon and lacked the requisite minimum contacts with the state necessary to confer personal jurisdiction. The trial court granted the defendant's motion without making any findings. On appeal, the plaintiff argued that the trial court had erred in granting the motion because the trial court should have treated the motion as a motion for summary judgment and there was at least *prima facie* evidence of personal jurisdiction in the record. The defendant countered that its motion should not be treated as a motion for summary judgment because ORCP 21 A(2) expressly authorizes courts to determine the facts relating to personal

jurisdiction and, because the trial court granted the motion, it must be assumed that it made the necessary findings to reach that conclusion. We held that under ORCP 21 A(2) the court may determine the jurisdictional facts at the time of the motion to dismiss but that, for purposes of the motion, the trial court erred in concluding that the facts were insufficient to establish personal jurisdiction.

■■     We fail to perceive how our holding in *Industrial Leasing Corp.* controls in this case where there is not an issue regarding jurisdiction. In our view, the issue concerning the enforceability of a forum selection clause in a contract is a matter of contract law and not a matter that would implicate subject matter jurisdiction under ORCP 21 A(1). That rule provides that "lack of jurisdiction over subject matter" may be challenged by a motion to dismiss. The concept of subject matter jurisdiction is well defined as pertaining to the authority of the court to deal with the general subject involved in the action. *Garner v. Alexander*, 167 Or 670, 120 P2d 238 (1941), *cert den* 316 US 690 (1942). "It exists when the constitution, the legislature or the law has told a specific court to do something about the specific kind of dispute in issue." *Greeninger v. Cromwell*, 127 Or App 435, 438, 873 P2d 377 (1994). Under the Oregon Constitution, subject matter jurisdiction exists in the circuit courts unless a statute or rule of law divests them of jurisdiction. *Novich v. McClean*, 172 Or App 241, 245, 18 P3d 424, *rev den* 332 Or 137 (2001).

■■     Merely because the parties have agreed upon a forum selection clause that limits where the parties may litigate their disputes under their agreement does not implicate subject matter jurisdiction. Parties by agreement have neither the power to confer or the power to divest an Oregon court of subject matter jurisdiction. *Fox et ux v. Lasley*, 212 Or 80, 318 P2d 933 (1957), *overruled on other grounds by Hawkins v. Hawkins*, 264 Or 221, 237, 504 P2d 709 (1972). The issue of the enforceability of a forum selection clause is qualitatively different from the issue of subject matter jurisdiction. The issue in this case is like other issues that arise from terms that parties may agree upon that operate as conditions precedent to the right to litigate in court or to procure a court-ordered remedy, such as a mandatory arbitration

clause[3] or an agreement that damages for breach are limited to a certain remedy. In general, those kinds of issues, including the issue of the enforceability of a forum selection clause, are subject to challenges about the scope and subject matter of the term, whether it was the product of misrepresentation, deceit or coercion, and whether the term has been waived or one party is estopped from enforcing it. All of those issues are the kinds of issues that are subject to the Oregon Rules of Civil Procedure. In sum, ORCP 21 A(1) does not authorize a motion for dismissal on the basis of a forum selection clause.[4]

■　　　Defendants filed their motion to dismiss under ORCP 21. In their motions, they argued that, "[p]ursuant to the contractual agreement between the parties, this entire action should have been filed in San Juan, Puerto Rico and thus should be dismissed by this Court." In support of their motion, they referred to section 16.5 of the PCS Agreement. The Agreement was attached as an exhibit to an affidavit by one of defendants' attorneys and was filed contemporaneously with the motion. The "forum selection" clause had not

---

[3] Unlike the Oregon Rules of Civil Procedure, which do not expressly provide for a procedure for determining the validity of forum selection clauses, ORS 36.310 provides for a statutory proceeding regarding the enforcement of arbitration clauses in agreements. It provides, in relevant part,

"The court or judge shall hear the parties, and if satisfied that the making of the contract or submission or the failure to comply therewith is not an issue, shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement or submission. If the making of the contract or submission or the default is an issue, the court or the judge shall proceed summarily to the trial thereof. If no jury trial is demanded by either party, the court or judge shall hear and determine such issue. Where such an issue is raised, any party may * * * demand a jury trial of the issue, and if such demand is made, the court or judge shall make an order referring the issue to a jury in the manner provided by ORCP 51 D."

[4] In light of our ruling that a motion to enforce a forum selection clause is not cognizable under ORCP 21 A(1), the means by which to challenge the venue chosen by plaintiff will depend on the facts of the particular case. It may be that the issue may be resolved in some cases under ORCP 21 B (providing for judgment on the pleadings). In others, the issue may be resolved as a matter of law under ORCP 47 where there is no genuine issue of material fact about what the parties intended. A motion under ORCP 47 can be filed "at any time after the expiration of 20 days from the commencement of the action." ORCP 47 A. If the enforceability of a forum selection clause cannot be resolved as a matter of law, a trial court may wish to bifurcate the issue for trial. If the parties wish an issue of fact to be submitted to a jury as part of the determination of the issue, special interrogatories are available that enable a trial court to make rulings of law based on jury findings. *See* ORCP 53 B and ORCP 61 B.

been pled by plaintiffs at the time. Although a complaint can be dismissed under ORCP 21 A(8) for failure to state ultimate facts sufficient to constitute a claim, the rule does not authorize the use of facts that do not appear on the face of the pleading to grant a motion under subsection (8). Consequently, despite its label, defendants' motion cannot properly be considered under ORCP 21. We conclude that plaintiffs are correct. Defendants' motion was the functional equivalent of a summary judgment motion under ORCP 47 C.

The concurrence disagrees that we should treat defendants' motion as a summary judgment motion. According to it, the motion should be treated as a nonenumerated type of motion to dismiss, for which the court can generate appropriate procedures under the authority of ORS 1.160. That statute provides, in pertinent part, that when jurisdiction is conferred on a court and in the exercise of that jurisdiction,

> "if the course of proceeding is not specifically pointed out by the procedural statutes, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the procedural statutes."

The flaw in the concurrence's reliance on ORS 1.160 is that the statute authorizes a court to exercise its jurisdiction by implementing its own procedure only when there is no adequate existing procedure already available. In *K. v. Health Division*, 26 Or App 311, 319-20, 552 P2d 840 (1976), *rev'd on other grounds* 277 Or 371 (1977), the court "consider[ed] * * * whether this is an appropriate case for it to provide procedures under ORS 1.160." It examined *Wulff v. Sprouse-Reitz Co., Inc.*, 262 Or 293, 313, 498 P2d 766 (1972), and *Amer. Timber/Bernard v. First Nat'l*, 263 Or 1, 500 P2d 1204 (1972), and found that ORS 1.160 was intended to provide authority for creating new procedures only when there was no available procedure already established. It concluded, "Here, * * * there is no claim of another available procedure. We hold, then, that this is a proper case for use of new procedures as provided in ORS 1.160[.]" *K.*, 26 Or App at 320. Also, in *Amer. Timber/Bernard,* 263 Or at 10, the Supreme Court observed that,

"[T]raditionally, the formation of procedural rules in this state has been considered to be a function of the legislature. Where a procedure at law has been provided for the vindication of a claim, we do not believe it to be our function under [ORS 1.160] to provide another procedure[.]"

*See also Household Finance v. Bacon*, 58 Or App 267, 271, 648 P2d 421, *rev den* 293 Or 653 (1982) ("The redemption statutes do not provide a procedure for curing a faulty notice under circumstances presented here. Accordingly, we think the court had authority under ORS 1.160 to provide 'any suitable process or mode of proceeding' to conform to the spirit of the redemption statutes."). Here, the Oregon Rules of Civil Procedure provide a procedure to determine the enforceability of a forum selection clause. Depending on the specific facts of each case, such an issue can be decided on the pleadings, on summary judgment, or at trial. Moreover, ORCP 53 B permits the bifurcation of issues for trial. The availability of those procedures obviate the need for the court to create a different procedure, and where the legislature has provided adequate procedures, this court should not create a different procedure pursuant to ORS 1.160. We hold that defendants' motion is properly dealt with as a motion under ORCP 47 C.

■ When we review a judgment based on ORCP 47 C, we inquire whether there is a genuine issue of material fact in the summary judgment record and whether the moving party is entitled to judgment as a matter of law. We turn to the merits of the case and the parties' arguments. Plaintiffs argue that their claims do not "arise from" the parties' partnership agreement but rather from events that occurred before they entered into the partnership and therefore the forum selection clause does not govern their claims.[5] In support of their argument, they point to the language in the forum selection clause that refers to "any dispute under this Agreement" or "any legal action arising from this Agreement." Defendants respond, "the fact that the alleged conduct complained of occurred prior to their entry into [the partnership agreement] does not take their claims outside the forum selection clause." (Footnote omitted.)

---

[5] Plaintiffs appear to accept that, if the forum selection provision applies, it provides for exclusive rather than concurrent venue in Puerto Rico.

The issue, thus, is one of determining the meaning and effect of the forum selection provision of the Agreement. In construing a contract, our goal is to determine and give effect to the intent of the parties, if possible. *See* ORS 42.240. We begin by examining the text of the disputed provision in the context of the document as a whole. If the provision is unambiguous, the analysis is over. Whether the terms of a contract are unambiguous is a question of law. In the absence of an ambiguity, we construe the contract as a matter of law. If the agreement is ambiguous, we examine extrinsic evidence of the parties' intent. Finally, if a contractual provision remains ambiguous after that examination, we rely on appropriate maxims of construction. *Yogman v. Parrott*, 325 Or 358, 361-64, 937 P2d 1019 (1997).

The Agreement provides that "[v]enue for any action arising from this Agreement" shall be in Puerto Rico. Only legal actions that fit within that description are subject to the forum selection provision. The relevant dictionary definitions of "arise" include "to originate from a specific source," "to come into being," and "to become operative." *Webster's Third New Int'l Dictionary*, 117 (unabridged ed 1993). According to the same dictionary, "from" is "used as a function word to indicate the source or original or moving force of something as * * * (4) the place of origin, source, or derivation of a material or immaterial thing." *Id.* at 913. Those definitions allow at least a reasonable inference that the forum selection provision in the Agreement was intended to apply only to legal actions that flow directly from the terms and requirements of the agreement itself.

In addition, the record shows that plaintiffs were not parties to the Agreement at the time that defendants allegedly made the representations about which plaintiffs complain. Also, the Agreement does not contain representations or other inducements that might lead a person to invest in the partnership. Rather, it describes the structure of the partnership, the relationships between the limited partners and the general partner, management of the business, capital contributions, responsibility for expenses, distribution of profits, and other similar matters that one would expect such an agreement to cover. It is inferable in light of those facts that the parties contemplated that the forum selection clause

in the Agreement would govern disputes over matters that arose after the Agreement was signed but that section 16.5 is unrelated to preagreement representations.

■ Defendants refer us to federal case law that they say requires a contrary conclusion. We note that we are not bound by a federal court's interpretation of similar or even identical contract language. But even if we were persuaded by the reasoning in those opinions, defendants are faced with an unsurmountable hurdle because of the procedural posture of this case under ORCP 47 C. As parties moving for summary judgment, defendants have the burden of demonstrating that the forum selection clause unambiguously requires the dismissal of plaintiffs' claims. *Eagle Industries, Inc. v. Thompson*, 321 Or 398, 404, 900 P2d 476 (1995). As we have said, there is at least a reasonable inference from the text and context of the forum selection clause that it was not intended to cover disputes arising from conduct that occurred before plaintiffs were parties to the Agreement. We conclude that the trial court erred when it granted summary judgment to defendants on the basis of the forum selection clause.

■ We next consider plaintiffs' argument that the court also erred in holding that, as a result of the 1995 amendments to ORS 166.725, plaintiffs have failed to state a claim under ORICO.[6] In order to recover under ORICO, a plaintiff must prove that the defendant engaged in a pattern of racketeering activity, ORS 166.720, which requires proof that the defendant engaged in conduct that constituted one or more of a number of listed crimes. ORS 166.715(6). Before 1995, the law did not require a prosecution or conviction for the elements of the crime in order for a plaintiff to obtain a civil recovery. ORS 166.725 (1993). Rather, a plaintiff could prove

---

[6] On an appeal from a final judgment, we normally review any intermediate order that involves the merits or necessarily affects the judgment that is appealed. ORS 19.425. Because the trial court dismissed the case on grounds unrelated to the merits, it is not clear that its rulings on ORICO issues satisfy those criteria. When a court determines that it is without jurisdiction, it cannot proceed to decide any other issue. *See Dippold v. Cathlamet Timber Co.*, 98 Or 183, 188, 193 P 909 (1920). Any decision that it made on another issue would not be essential to its judgment and thus would not give rise to issue preclusion. *See Drews v. EBI Companies*, 310 Or 134, 139-40, 795 P2d 531 (1990). In this case, we review the trial court's ORICO rulings because it did in fact have jurisdiction and those rulings provide an alternative ground for that portion of its judgment that dismisses the ORICO claims.

the crime in the civil ORICO case. *See Computer Concepts, Inc. v. Brandt*, 310 Or 706, 716-18, 801 P2d 800 (1990). As amended in 1995, ORS 166.725(6) and (7) now require, so far as the crimes alleged in this case, that the plaintiff prove that the defendant has been convicted of the alleged crimes and that any rights of appeal have expired. Without proof of those facts, a plaintiff cannot obtain either injunctive relief or damages. In addition, ORS 166.725(11)(b) now provides that the cause of action accrues only when the criminal conviction is obtained. Or Laws 1995, ch 619, § 1.

The events that are the basis for plaintiffs' ORICO claims occurred before the effective date of the 1995 amendments, so plaintiffs' ORICO claims had accrued before that date. Defendants do not assert that plaintiffs have failed to state a claim under the pre-1995 version of ORS 166.725. Rather, they argue, and the trial court agreed, that the 1995 version applies to plaintiffs' claims. If the trial court is correct, plaintiffs have not stated, and apparently cannot state, an ORICO claim. On the other hand, if the pre-1995 version applies, the trial court erred in dismissing those claims on the grounds that defendants asserted.

The legislature did not expressly provide whether the 1995 amendments are retroactive—that is, whether they affect rights arising out of events that had occurred before the amendments became effective. Nothing in the wording of the amendments suggests that it intended to address that issue.[7] In the absence of an express direction, we look to the purpose of the changes and to the general rules for construing statutes to determine whether the amendments are retroactive.

In general, a statutory change that affects legal rights and obligations arising out of past acts is not retroactive, but one that affects the remedies that a party may

---

[7] Defendants argue that, because ORS 166.725(6) and (7) refer to a conviction that "has been obtained," a phrase that is in the past tense, the legislature intended the amendments to operate retroactively. That phrase does not refer to when the defendant engaged in the conduct that resulted in the conviction. It creates no requirement concerning the nature of that conduct. Rather, it refers to the situation at the time that the plaintiff brings the action. That in itself is sufficient to distinguish this case from *Newell v. Weston*, 150 Or App 562, 569, 946 P2d 691 (1997), *rev den* 327 Or 317 (1998), on which defendants rely.

receive for a violation of its legal rights is retroactive. Courts label the first kind of change "substantive" and the second "remedial." However, as the Supreme Court has noted, the words "substantive" and "remedial" are more labels that we apply after reaching a conclusion than they are aids to the analysis. *See Joseph v. Lowery*, 261 Or 545, 548-49, 495 P2d 273 (1972); *see also Vloedman v. Cornell*, 161 Or App 396, 399-401, 984 P2d 906 (1999).

In this case, plaintiffs had a fully accrued cause of action before the amendments became effective. That was a substantive right. The amendments significantly modified the substance of what plaintiffs had to prove to be able to assert that right. Before the amendment, they could recover merely by showing that defendants had violated a criminal statute; after the amendment, they had to show that defendants had been convicted of that crime. The difference is significant; not only does a conviction require a higher standard of proof than does a civil recovery, but plaintiffs would have to rely on a public authority to bring the criminal case rather than on their own proof. The statute did not change the remedy that plaintiffs would receive if they prevailed, but it profoundly affected what they needed to prove in order to prevail.

In *Thornton v. Hamlin*, 41 Or App 363, 597 P2d 1307 (1979), the plaintiff sued an employee of the Department of Transportation to recover for injuries that he suffered in an accident involving a snowplow that the defendant was driving. The plaintiff received workers' compensation benefits from his employer as a result of the accident. After the accident, the legislature amended the Tort Claims Act to make public bodies and their employees immune from liability when the injured party received such benefits. The defendant argued that the amended statute applied to the case. We noted that the amendment was silent on its retroactive effect and held that we would not construe it to apply retroactively if doing so would " 'impair existing rights, create new obligations, or impose additional duties with respect to past transactions.' " *Id.* at 366, *quoting Derenco v. Benj. Franklin Fed. Sav. and Loan*, 281 Or 533, 539 n 7, 577 P2d 477, *cert den* 439 US 1051 (1978). We then held that, "in cutting off plaintiff's previous accrued cause of action, such retroactive application

would impair an existing right belonging to plaintiff." *Id.* We therefore refused to apply the amended statute.

We do not see any difference between a statute that entirely cuts off a claim, as did the statute in *Thornton*, and one that changes the elements of that claim, as does the statute in this case. In either situation, the statute has changed the legal consequences that attach to past actions and has impaired the plaintiff's existing rights. We do not presume that the legislature intends that result. The trial court erred in holding that the 1995 amendments to ORS 166.725 apply to events that occurred before their effective date.

Finally, the parties raise two issues relating to arbitration of these claims. Plaintiffs assert that, once the court concluded that the forum selection provision of the Agreement was controlling, it should have applied the arbitration provision in the same clause and ordered the parties to arbitrate the dispute in San Juan, Puerto Rico. Because we reverse the trial court's holding that the forum selection provision applies to these claims, the foundation for plaintiffs' assertion that the court should have abated the case pending arbitration no longer exists.[8]

In a cross-assignment of error, defendants argue that the trial court erred in entering an order stating that plaintiffs have not waived their right to seek arbitration. Plaintiffs originally took the position that the forum selection provision did not apply. After the trial court ruled that the provision did apply and indicated that it would dismiss the case on that ground, they filed a request for arbitration with the American Arbitration Association and asked the trial court to stay the case for the duration of the arbitration. In response, defendants argued that plaintiffs had waived any right to arbitrate by litigating the case for well over a year before seeking arbitration. The court refused to stay the case, but it agreed to enter an order finding that plaintiffs had not waived their right to arbitration under the Agreement.

---

[8] We have no occasion to consider whether plaintiffs' assumption that the arbitration and forum selection provisions have the same scope is correct. *See* 182 Or App at 26 n 3 (discussing inapplicability of presumption in favor of arbitrability to forum selection clause).

The effect of the court's order is at best unclear. It was not necessary to the judgment, to the decision not to stay the case, or to any other action that the court took. As defendants note, the order was essentially an advisory opinion. Its apparent purpose was to respond to defendants' argument that the court should deny the requested stay on the ground that plaintiffs had waived their right to arbitration. However, once the trial court concluded that the forum selection provision required it to dismiss the case, it had no authority to do anything other than dismiss it. *See* 182 Or App at 30 n 6. Unlike the court's rulings on the ORICO issue, this order does not provide an alternative ground to support all or part of the court's judgment of dismissal. It is not, thus, something that we can review. For that reason, we affirm on the cross-assignment of error.

Reversed and remanded.

**ARMSTRONG, P. J.,** concurring.

I agree with the majority's decision to reverse the judgment dismissing the case and with its reasoning on the other issues. I disagree with its reasoning for reversing the dismissal and therefore write separately.

The majority makes a ruling of procedure and a ruling of substance in explaining its decision to reverse the dismissal; both are wrong. It first holds, procedurally, that the only way that defendants can obtain a pretrial decision on whether the forum selection clause applies to this case is by a motion for summary judgment. That holding ignores a statute that expressly permits the trial court to adopt a more sensible procedure. It then holds, substantively, that the trial court erred in dismissing the case because there are issues of fact about the meaning of the clause in this case. However, there are no disputed facts in the record, and we should apply normal rules of contract construction and decide the issue as a matter of law. I would hold that the trial court properly treated defendants' motion as a motion to dismiss but erred in dismissing the case.

The trial court dismissed the case on defendants' motion, holding that the forum selection clause of the PCS Agreement of Limited Partnership (the Agreement) applied

to plaintiffs' claims.[1] In making its decision by ruling on a pretrial motion to dismiss, the trial court correctly followed every other jurisdiction that has considered the matter. The purpose of a forum selection clause is to require the parties to resolve their disputes in a specific judicial forum. In order for a forum selection clause to have any practical meaning, there must be a way to determine at an early date whether it applies to the case at hand. The longer a case remains pending in a forum other than the chosen one, the longer the defendant is damaged. Even if there are no factual disputes, a motion for summary judgment is seldom as expeditious as a motion under ORCP 21 A. If there are factual issues, a motion for summary judgment will be useless, and the parties will have to wait for trial to determine whether they should be in an Oregon court at all. If the finder of fact ultimately determines that the forum selection provision is both enforceable and applicable, the Oregon trial will become a nullity and the parties must go to the chosen forum for an entirely new trial. That result would waste both Oregon's judicial resources and the resources of the parties. It would also violate the state's underlying policy to enforce the parties' valid choice of a specific judicial forum. The longer the parties remain in a forum that they did not choose, the longer they lose the benefit of their bargain.[2]

Courts universally recognize the importance of a speedy resolution of this issue. Every other jurisdiction that has considered the question provides a method for resolving the issue by an early pretrial motion; none relegates that resolution to summary judgment or trial. With a few exceptions, the jurisdictions permit the parties to present evidence outside of the pleadings to support their positions on the motion, and the court resolves any factual disputes. This uniformity of practice occurs despite the lack of applicable procedural rules and without agreement on the appropriate rationale. Some state courts treat it as a question of proper venue, *see,*

---

[1] That clause provides that "[v]enue for any legal action arising from this Agreement, including enforcement of any arbitration award, shall be in San Juan, Puerto Rico."

[2] A trial court could order a separate trial on the meaning of the forum selection clause, ORCP 53 B, but that approach would still be less expeditious and efficient than it would be to resolve the issue on a motion to dismiss.

*e.g.*, *Perkins v. CCH Computax, Inc.*, 333 NC 140, 423 SE2d 780 (1992); *Voicelink Data Services v. Datapulse*, 86 Wash App 613, 937 P2d 1158 (1997), while others simply rule on a motion to dismiss without identifying any particular rule. *See, e.g.*, *Accelerated Christian Educ. v. Oracle Corp.*, 925 SW2d 66 (Tex App 1996). Federal courts universally hold that a motion to dismiss is the only proper procedure. Most rely on Federal Rule of Civil Procedure 12(b)(3), which provides for dismissal on the ground of improper venue. A few require a motion under FRCP 12(b)(6), which provides for dismissal for failure to state a claim. *See* 17 Daniel R. Coquillette et al, eds., *Moore's Federal Practice*, §§ 111.04[3][a] to 111.04[3][b] (3d ed 2002).[3] Federal courts also may treat a motion to dismiss based on a forum selection clause as a variation on a motion to dismiss for *forum non conveniens*. 17 *Moore's*, § 111.75. The federal courts do not treat the lack of a rule that expressly provides for a motion to dismiss on the ground of *forum non conveniens* as having any significance.

The majority refuses to follow those other jurisdictions because no Oregon procedural rule expressly provides for enforcing a forum selection clause by a motion to dismiss. It fails to recognize that the statutes and rules give trial courts the necessary flexibility to adopt an appropriate procedure when the rules do not provide one. In the trial court, defendants separated their motion to dismiss based on the forum selection clause from their motions to dismiss under Oregon Rule of Civil Procedure 21 A. On appeal, however, they suggest that their motion fits under ORCP 21 A(2), which provides for motions to dismiss for lack of personal jurisdiction.[4] The difficulty with their suggestion on appeal is that the trial court had jurisdiction over the case. The motion

---

[3] The minority position is flawed because it allows the motion to be made at any time up to trial and because the facts to support the motion are limited to those in the pleadings, which prevents the parties from presenting evidence on such issues as whether enforcing the clause would be unreasonable under the circumstances. *See* 17 *Moore's*, § 111.04[3][b][ii].

[4] Such a motion permits the parties to present evidence outside of the pleadings, with the court resolving any factual disputes. We would then accept the trial court's factual conclusions if the evidence was sufficient to support them and would review its legal conclusions as a matter of law. *See Industrial Leasing Corp. v. Miami Ice Machine Co.*, 126 Or App 80, 83-84, 867 P2d 548 (1994).

did not question that jurisdiction but, rather, asked the trial court to decline to exercise its jurisdiction because the parties had chosen another forum.[5]

Defendants' original approach was correct: their motion was a motion to dismiss separate from the motions that the rules provide. The trial court's authority to entertain the motion comes from ORS 1.160, which is designed for precisely that situation:

> "When jurisdiction is, by the Constitution or by statute, conferred on a court or judicial officer, all the means to carry it into effect are also given; and *in the exercise of the jurisdiction, if the course of proceeding is not specifically pointed out by the procedural statutes, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the procedural statutes.*" (Emphasis added.)

Oregon courts have relied on ORS 1.160 and its predecessors, which go back without change to the Deady Code of 1862, a number of times to create appropriate procedures when none other was available.[6] In *Butterfield v. State Indus. Acc. Com.*, 111 Or 149, 223 P 941, 226 P 216 (1924), the Supreme Court relied on the predecessor to ORS 1.160 to create a procedure for circuit courts to try appeals from administrative decisions under the Workmen's Compensation Law. Because of the statute, the absence of a specified mode of procedure did not prevent a fair and orderly trial of the issues. 111 Or at 162. The court reemphasized its action soon afterward in *Meany v. State Industrial Acc. Com.*, 113 Or 371, 384, 227 P 305, 232 P 789 (1925). It had previously relied on the statute as the basis for its authority to issue execution on a judgment for costs in a case where it had original jurisdiction. *State v. Hodgin*, 76 Or 480, 487-88, 146 P 86, 149 P 530 (1915).[7]

---

[5] All of the cases that discuss the issue agree that a forum selection clause does not deprive the court of subject matter jurisdiction but, instead, provides an opportunity for the court to decline to exercise jurisdiction in light of the parties' agreement. *See, e.g., Vanderbeek v. Vernon Corp.*, 25 P3d 1242, 1248 (Colo App 2000); *Perkins*, 423 SE2d at 782.

[6] The procedural rules anticipate the use of ORS 1.160 in this fashion. ORCP 14 A sets forth the general requirements for a motion without limiting the motions to which it applies to those that the rules specifically describe.

[7] In *Evans v. OSP*, 87 Or App 514, 533, 743 P2d 168 (1987), we relied on ORS 1.160 in holding that our authority to make an order carried with it the authority to enforce it, including the authority to invoke our contempt power.

Other appellate uses of ORS 1.160 include *State Highway Com. v. Burk et al.*, 200 Or 211, 259-60, 265 P2d 783 (1954) (authorizing trial court in condemnation action to apportion the award among the owners and lessees of the condemned land); *State v. Ridder*, 185 Or 134, 138-39, 202 P2d 482 (1949) (prescribing method of appealing from a conviction based on a plea of guilty when the defendant alleges that the sentence is unconstitutionally cruel or unusual); *State v. Chase*, 106 Or 263, 267-69, 211 P 920 (1923) (trial court had authority to disqualify male prospective jurors in order to obtain a jury that consisted of equal numbers of men and women, as statute required); and *Household Finance v. Bacon*, 58 Or App 267, 271, 648 P2d 421, *rev den* 293 Or 653 (1982) (redemption statutes did not provide method for curing faulty notice in circumstances present in the case; court had authority under ORS 1.160 to adopt an appropriate procedure for doing so). The only apparent restriction on the use of the statute is that the court must have jurisdiction of the case. ORS 1.160 does not confer jurisdiction but simply authorizes a court that has jurisdiction to adopt a suitable process or mode of proceeding in order to carry its jurisdiction into effect. *State v. Endsley*, 214 Or 537, 546-47, 331 P2d 338 (1958); *Hensley v. State Court System Appeals Board*, 72 Or App 64, 70, 695 P2d 65 (1984).

In a closely related area, we have decided issues raised by pretrial motions that the Oregon Rules of Civil Procedure did not expressly authorize. In *Novich v. McClean*, 172 Or App 241, 244, 18 P3d 424, *rev den* 332 Or 137 (2001), and *Fenn and Fenn*, 63 Or App 506, 512, 644 P2d 1143 (1983), the trial courts decided issues of *forum non conveniens* based on pretrial motions to dismiss. In *Fenn* there was a statute authorizing such a motion, but there was no procedural rule implementing the statute. In *Novich*, there was no basis for the motion in either a statute or a rule. We resolved the issues on appeal without discussing the authority for the motions, but the only possible source was ORS 1.160. The issue in this case, a motion to dismiss because the parties have chosen a different forum, is close in concept to *forum non conveniens*.[8]

---

[8] As our *forum non conveniens* cases show, we have the authority to create an adequate procedure when the only available statutory procedure would be

We should follow the uniform practice of other jurisdictions, and exercise the authority that the legislature gave us in ORS 1.160 for precisely this purpose, by holding that a trial court has the authority to rule on a motion to dismiss that is based on a forum selection clause. The procedures should be similar to those for motions under ORCP 21 A(1) and (2). Thus, the parties may submit relevant evidence and the court will then decide the motion, resolving whatever factual disputes may exist. That procedure provides a way to resolve the question at an early stage; if the motion is meritorious, it will send the parties to the forum where they agreed to go, at the least expense to them and to this state. That is the procedure that the trial court followed in this case.[9]

I turn to the merits of the trial court's decision, which I review in the same way that we would review a decision on a motion under ORCP 21 A(2)—that is, I accept the trial court's factual findings if there is evidence to support them and review the legal conclusions that it drew from the facts before it. The obvious point in that regard is that there are no disputed facts. Thus, even if we treat defendants' motion as one for summary judgment, there is nothing for the trial court to do on remand. The issues before us are purely legal, and we must resolve them. If the forum selection clause applies to this case, we should affirm the trial court's dismissal; if it does not apply, we should reverse.

Oregon has a well-established method for construing contractual provisions such as the forum selection clause in the Agreement. According to the Supreme Court, the purpose behind that method is to determine and enforce the intent of the contracting parties, as the statutes require. ORS 42.220; ORS 42.240; *see Yogman v. Parrott*, 325 Or 358, 937 P2d 1019 (1997). To find that intent, a court first looks at the words in

insufficient to give the parties the benefit of their agreement. (The availability of summary judgment did not prevent us from deciding the issue on a non-ORCP motion to dismiss.) Thus the majority's suggestion that ORS 1.160 does not apply to this case is incorrect.

[9] In *Reeves v. Chem Industrial Co.*, 262 Or 95, 495 P2d 729 (1972), the first Oregon case to approve the validity of a forum selection clause, the defendant raised the issue by a motion to dismiss, although there was no pre-ORCP express statutory provision for a motion to dismiss. Only ORS 1.160 could justify the procedure that the trial court and the Supreme Court followed.

question in the context of the contract of which they are a part. If the meaning of the words is clear in that context, the court goes no further. *Yogman*, 325 Or at 361. If, however, the contract is ambiguous, the court then considers extrinsic evidence of the parties' intent in order to resolve the ambiguity. Whether the terms are clear or ambiguous is a matter of law for the court to decide. Contractual terms are ambiguous when, in context, they can reasonably be given more than one meaning. *Id.* at 363-64. Finally, if the evidence is insufficient to resolve the ambiguity, the court resolves it by applying appropriate maxims of construction. *Id.* at 364-65. I do not find any ambiguity in this clause; it is clearly inapplicable to plaintiffs' claims. Even if it were ambiguous, applying the appropriate maxim of construction leads to the same result.

The Agreement establishes venue "for any legal action *arising from this Agreement*" in San Juan, Puerto Rico. (Emphasis added.) The question is whether that provision applies to the claims that plaintiffs make in their complaint. None of those claims relates to the terms of the Agreement or to any actions taken under it. Rather, as defendants recognize, every claim that plaintiffs make involves things that defendants allegedly did before plaintiffs were parties to the Agreement. The damages that plaintiffs seek are for actions that allegedly induced them to enter into the Agreement, not for anything related to the terms or conditions that it contains or the things that happened after plaintiffs became bound by it. The forum selection clause applies to plaintiffs' claims, and the trial court correctly dismissed them, only if claims based on actions that induced plaintiffs to enter into the agreement are claims "arising from this Agreement."

In construing contracts, the Supreme Court relies heavily on the dictionary meanings of the words that the parties used. *See Yogman*, 325 Or at 362-63. The relevant dictionary definitions of "arise" include "to originate from a specific source," "to come into being," and "to become operative." *Webster's Third New Int'l Dictionary*, 117 (unabridged ed 1993). According to the same dictionary, "from" is "used as a function word to indicate the source or original or moving force of something as * * * (4) the place of origin, source, or derivation of a material or immaterial thing." *Id.* at 913. Unlike forum selection clauses discussed in other cases, that

clause does not extend to disputes that "relate to" or are "connected with" the Agreement. Under the words that the parties used, the Agreement itself, not the relationship of which the Agreement is a part, and not the things that led the parties to enter into the Agreement, must be the source of the dispute. It must be "the place of origin, source, or derivation" of the legal action.

Plaintiffs were not parties to the Agreement at the time that defendants allegedly made the representations about which plaintiffs complain, so it is difficult to see how the Agreement could be the point of origin of this legal action. In addition, the Agreement does not contain representations or other inducements that might lead a person to invest in the partnership. Rather, the Agreement describes the structure of the partnership, relationships between the limited partners and the general partner, management of the business, capital contributions, responsibility for expenses, distribution of profits, and other similar matters that one would expect such an agreement to cover. Defendants do not assert that any aspect of the Agreement, other than the forum selection clause, is relevant to any party's claim or defense. Thus, the context of the Agreement as a whole does not provide any broader scope to the forum selection clause than do the words themselves.

I do not see how the Agreement can be the source or origin of plaintiffs' claims. The purpose of the representations about which they complain was to induce them to invest in the overall enterprise; the Agreement is simply part of the package that came with the decision to invest. It was the end point of the representations, not their source. The Agreement was the goal to which defendants sought to guide plaintiffs by their representations, not their origin. Plaintiffs do not allege that any of the representations related to the terms or conditions of the Agreement. It may well be that the Agreement is "related to" or "connected with" plaintiffs' claims, but those claims do not arise from it. I would hold that the forum selection clause is unambiguous and does not apply to plaintiffs' claims.

The parties discuss a number of federal cases in support of their positions. For two reasons, with the exception of

several Ninth Circuit cases, I do not find them very helpful. First, many of the provisions at issue are broader than the one in the Agreement and clearly cover the parties' entire relationship, not simply a specific document. Secondly, most of the cases involve arbitration rather than forum selection clauses. There is a special presumption in favor of arbitrability under both federal and state law. Most of the federal cases on which defendants rely involve broad constructions of arbitration clauses that often pay little attention to the words that the parties used. In *Snow Mountain Pine, Ltd. v. Tecton Laminates Corp.*, 126 Or App 523, 869 P2d 369, *rev den* 319 Or 36 (1994), we stated that the presumption requires us to order arbitration "unless we can say with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute[.]" *Id.* at 529. If there is any ambiguity, we leave the question of arbitrability for the arbitrator to decide. *Id.* The reason for that approach to an arbitration clause is that, when parties agree to arbitrate, they choose a nonjudicial forum for their disputes. In doing so, they agree that that nonjudicial forum will decide whether the dispute in issue is subject to the arbitration provision.

The extremely broad construction that we give an arbitration clause does not apply to a forum selection clause. When parties agree to a forum selection clause, they simply choose one judicial forum instead of another. There is no policy reason to construe such clauses differently from how we construe the rest of the contract, nor is there any reason to require that the chosen judicial forum be the one to decide whether the clause applies. Thus, there is no policy reason that would require us to strain to find a forum selection clause applicable to this case in the way that we might with an arbitration clause.[10] I would hold that the forum selection clause is unambiguous and does not apply to plaintiffs'

---

[10] Several Ninth Circuit cases construe arbitration or forum selection clauses similarly to the approach that the Supreme Court established in *Yogman*. *See Tracer Research v. Nat. Environ. Services Co.*, 42 F3d 1292 (9th Cir 1994); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F2d 509 (9th Cir 1988); *Mediterranean Enterprises, Inc. v. Ssangyong*, 708 F2d 1458 (9th Cir 1983). The analyses in those cases support my conclusion that the forum selection clause in the Agreement does not apply to plaintiffs' claims.

claims. Even if I were to conclude that the clause is ambiguous, it would still be our job to resolve the ambiguity before deciding that the clause requires us to send the case to a different forum.

The majority holds that the clause is ambiguous and remands the case for a factual determination. However, as *Yogman* makes clear, the only relevant facts would be extrinsic evidence of the intent of the parties in agreeing to the forum selection clause. Although the parties had both the opportunity and every incentive to place such evidence in the record, there is none. There is no reason to believe that they could produce any on remand. The clause was one of many provisions in an agreement that was part of a larger investment package. There is no evidence that plaintiffs paid the slightest attention to the terms of the clause in deciding to invest or that defendants told them anything about their understanding of the clause. Thus, if the majority is correct that the clause is ambiguous, we must resolve the ambiguity as a matter of law by using the appropriate maxim of construction. In that context the appropriate maxim is to construe the ambiguous phrase against the drafter. *See Quality Contractors, Inc. v. Jacobsen,* 139 Or App 366, 371, 911 P2d 1268, *rev den* 323 Or 691 (1996). Because defendants drafted the Agreement, the majority's own analysis requires us to construe the clause against them, which would lead us to hold that the forum selection clause does not apply to plaintiffs' claims.