Argued and submitted February 4, 2000, reversed and remanded January 31, petition for review denied May 1, 2001 (332 Or 137)

Thomas NOVICH
and Daniel Koch,
*Appellants,*

*v.*

John McCLEAN,
*Respondent.*

(97 CV 0529 ST; CA A106736)

18 P3d 424

Tomas Finnegan Ryan argued the cause and filed the briefs for appellant.

Paul J. Speck argued the cause for respondent. With him on the brief was Forcum & Speck.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Plaintiffs appeal a judgment that dismissed their case on the grounds that the court lacked subject matter jurisdiction over it and that the court was an inconvenient forum to try it. We reverse.

The dispute arises from defendant's alleged breach of a real estate contract. In March 1990, defendant and a colleague, Jorge Suarez, agreed to sell plaintiffs a unit in a condominium complex, Quinta Mirage, that defendant and Suarez were developing near Puerto Vallarta, Mexico. The land on which Quinta Mirage eventually was built is located within 50 kilometers of the ocean. Consequently, the land is in a restricted zone and cannot be owned in fee by a person who is not a Mexican national. Although the contract did not address that issue, the parties apparently understood that the property would be held in a renewable trust (fideicomiso) for plaintiffs, a form of ownership that would be legal under Mexican law.

Defendant is a United States citizen who was then living in Mexico, and Suarez was a Mexican citizen. In 1991, defendant moved to Newport, Oregon; when this case began, he lived in Bend, Oregon. At all relevant times, plaintiffs appear to have been residents of Alaska, although they were vacationing in Mexico at the time that they entered the contract. The parties signed the contract in Mexico. Plaintiffs made a required down payment and also made prescribed monthly installment payments through approximately January 1994. The initial payments were delivered to defendant in Mexico. After 1991, plaintiffs mailed their payments to defendant's address in Oregon, and they engaged in other communications with him in Oregon.

At the time that defendant and Suarez agreed to sell plaintiffs the condominium, defendant and Suarez were buying the land on which they planned to develop Quinta Mirage on an installment contract from Gaspar Alarcon. Problems arose between defendant and Suarez and Alarcon. Before defendant and Suarez had made the final payment on the Alarcon contract, Alarcon sued them in a Mexican court to reclaim the property. He ultimately obtained a judgment

against them giving him exclusive possession of the property. Although plaintiffs and defendant sought to have that judgment set aside, their efforts were unavailing. According to both plaintiffs' and defendant's experts, no further action can be taken in Mexican courts to reclaim the property from Alarcon. Moreover, both experts agree that the applicable statutes of limitation have run in Mexico on any claims that plaintiffs could have brought against defendant and Suarez in Mexico.

Plaintiffs sued defendant in Oregon for breach of contract and for money had and received. Plaintiffs initially filed the action against both defendant and Suarez. However, they were unable to locate and serve Suarez, so he is not a party. Defendant moved to dismiss the action under the inconvenient forum doctrine[1] and for failure to join a necessary party, Suarez. Defendant also alleged, as an affirmative defense, that the court lacked subject matter jurisdiction of the action.

The trial court concluded that it lacked subject matter jurisdiction of the action and, in the alternative, that Oregon was an inconvenient forum and that the case properly belonged in a Mexican court. The court's holding that it lacked jurisdiction apparently was based on defendant's argument that Article 27 of the Mexican Constitution gives Mexican courts exclusive jurisdiction over disputes relating to the ownership of Mexican land. Its holding that Oregon was an inconvenient forum was based on the facts that the transaction occurred in Mexico, that Mexican law applies to it, that most potential witnesses are located in Mexico, that Suarez may be an indispensable party, and that a Mexican court had already decided some issues with respect to the transaction. Plaintiffs argue that the Mexican Constitution does not give Mexican courts exclusive jurisdiction over claims for damages resulting from the breach of a land sale contract and that the factors relevant to an inconvenient forum analysis indicate that Oregon is a convenient forum.

---

[1] The inconvenient forum doctrine is most commonly referred to by its Latin name of *forum non conveniens*. We will refer to it in this opinion as the inconvenient forum doctrine.

Because we conclude (1) that Article 27 does not confer exclusive jurisdiction on Mexican courts over a contractual claim between private parties for damages for breach of a contract to sell land in Mexico and (2) that Oregon is the only viable forum for plaintiffs' action and, therefore, that the inconvenient forum doctrine is not applicable, we reverse.

We begin by addressing whether the circuit court has subject matter jurisdiction over the parties' dispute. Under the Oregon Constitution, "[c]ircuit courts have subject matter jurisdiction over all actions unless a statute or rule of law divests them of jurisdiction." *Greeninger v. Cromwell*, 127 Or App 435, 438, 873 P2d 377 (1994) (citations omitted). The Oregon Constitution's broad grant of jurisdiction extends to the enforcement of contracts entered into in foreign countries. *Small v. Andrews*, 20 Or App 6, 16 n 3, 530 P2d 540 (1975). It is generally agreed, however, that courts lack jurisdiction to determine title to real property that is located in another jurisdiction. *See, e.g., Macomber v. Waxbom*, 213 Or 412, 415, 325 P2d 253 (1958); *Stricklin v. Soued*, 147 Or App 399, 936 P2d 398, *rev den* 326 Or 58 (1997).

Here, defendant concedes that no Oregon statute or rule of law divested the circuit court of jurisdiction over this case. Moreover, plaintiffs seek only damages against defendant and do not challenge the Mexican court's decision regarding the title to Quinta Mirage. Therefore, because plaintiffs' cause of action is transitory and is against a person rather than a thing, Oregon courts have subject matter jurisdiction over it. *Macomber*, 213 Or at 415. Defendant nonetheless argues that Article 27 of the Mexican Constitution vests Mexican courts with exclusive jurisdiction over any action regarding real property in Mexico. He further argues that principles of comity require us to recognize Mexico's exclusive jurisdiction and, therefore, to refrain from adjudicating this case.

Comity is a flexible concept that counsels us to enforce the laws of other states when, in the circumstances at hand, those laws neither offend international duty or convenience nor fail to protect the recognized rights of our citizens:

> " ' "Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and

good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.' "

*Jacobs v. Tristar Industries*, 74 Or App 31, 36, 701 P2d 455 (1985) (quoting *Red Fox and Red Fox*, 23 Or App 393, 398 n 6, 542 P2d 918 (1975), *rev den* (1976) (citation and some internal quotation omitted)). Under that definition of comity, even if we were to determine that Article 27 of the Mexican Constitution gave Mexican courts exclusive jurisdiction over this case, we still would need to determine whether we should accept that exclusivity. However, because we conclude that Article 27 does not give Mexican courts exclusive jurisdiction over plaintiffs' claims, we need not further consider the comity issue.

Article 27 of the Mexican Constitution, as translated, provides in relevant part:

> " 'Only Mexicans by birth or naturalization and Mexican companies have the right to acquire ownership of lands, waters, and their appurtenances, or to obtain concessions for the exploitation of mines or waters. The State may grant the same right to foreigners *provided they agree before the Ministry of Foreign Affairs (Secretaria de Relaciones Exteriores) to consider themselves as nationals with respect to such property, and bind themselves not to invoke the protection of their governments in matters relating thereto*[.]' "

Guillermo Emiliano del Toro, *Foreign Direct Investment in Mexico and the 1994 Crisis: A Legal Perspective*, 20 Hous J Int'l L 1, 8-9 (1997) (quoting Artículo 27 de la Constitución Política de los Estados Unidos Mexicanos, in Gisbert H. Flanz & Louise Moreno, *Mexico*, in *Constitutions of the Countries of the World*, 1, 23-25 (Albert P. Blaustein & Gisbert H. Flanz eds. 1988)) (emphasis added). The provision requiring foreigners to consider themselves Mexican nationals with respect to real property and not to invoke the protection of their home governments is known as a Calvo Clause. Provisions of that kind were widely enacted by Latin American countries in response to disruptive efforts by foreign governments to enforce foreign investors' claims against Latin

American governments. *See* Christopher K. Dalrymple, *Note, Politics and Foreign Direct Investment: The Multilateral Investment Guarantee Agency and the Calvo Clause*, 29 Cornell Int'l LJ 161, 164-65, 166 (1996).

The Calvo Clause embodied in Article 27 does not explicitly vest Mexican courts with exclusive jurisdiction over real property disputes. The provision requiring foreign property owners to consider themselves Mexican nationals with respect to real property does not preclude jurisdiction by foreign courts over disputes relating to real property, because nothing in the provision prohibits Mexican nationals from using foreign courts to resolve such disputes.[2] Moreover, the provision prohibiting foreigners from invoking the protection of their governments can be viewed as a grant of exclusive jurisdiction to Mexican courts over disputes relating to real property only if the invocation of governmental protection is understood very broadly to include judicial resolution of private disputes. Finally, it is not clear that a contractual action for damages between private parties is a matter "relating" to real property within the meaning of Article 27, because such an action has no bearing on the title to the property.

We do not decide the jurisdictional issue solely on the basis of the apparent meaning of Article 27. Our understanding of the provision also is informed by law review articles and the few state and federal cases that we have found that have applied Article 27. One commentator has summed up the operation of the Calvo Doctrine as follows: "The conflict between foreign investors and the concepts embodied in the Calvo Doctrine arises when a host country nationalizes or expropriates property owned by a foreign investor." Justine Daly, *Has Mexico Crossed the Border on State Responsibility for Economic Injury to Aliens? Foreign Investment and the Calvo Clause in Mexico after the NAFTA*, 25 St. Mary's LJ 1147, 1150 (1994). Daly's analysis indicates that the Calvo Clause would be applicable only when Mexico is a party to a dispute over land to which a foreigner claims title. Examples

---

[2] Of course, there may be issues that bear on the enforceability of foreign judgments in Mexican courts, but those are different issues from whether Mexican law bars Mexican nationals from using foreign courts to resolve disputes relating to real property.

that Dalrymple cites are in accord. According to Dalrymple, the Calvo Doctrine was formulated in response to the routine use by foreign governments in the mid- to late-1800s of diplomatic intervention and armed force to protect their citizens' claims to Latin American resources. In one extreme example, Mexico defaulted on a loan from a French-Swiss Bank; ostensibly in response to the default, Napoleon III invaded Mexico and installed a puppet emperor there. Dalrymple, 29 Cornell Int'l LJ at 164-65. Dalrymple also offers the more modern example of *North American Dredging Co. of Texas (U.S.A.) v. United Mexican States*, 4 Rev Int'l Arb Awards 26 (1926), a case in which the U.S.-Mexican Claims Commission held that a Calvo Clause in the parties' contract barred an American company from bringing its breach of contract claim against Mexico before an international arbitral tribunal. Dalrymple, 29 Cornell Int'l LJ at 167-68. Both commentators' analyses suggest that the Calvo Clause in the Mexican Constitution is applicable only to claims against the Mexican government. Such a narrow conception makes sense, given that the doctrine was formulated in response to encroachments by the United States and European countries on the sovereignty of Latin American countries. It is difficult to see how a case such as this one could have any effect on Mexico's sovereignty: only monetary damages (rather than title to real property) are involved, and all parties before the court are United States citizens.

Finally, our conclusion that Article 27 does not apply to a damage claim between private parties is reinforced by the few cases that we have found that address the provision. In *Brady v. Brown*, 51 F3d 810 (9th Cir 1995), the defendant challenged the judgment of a federal district court holding him liable for fraud. The defendant, a Mexican domiciliary, was the plaintiffs' former attorney; the plaintiffs sued him for fraud after he transferred their interest in land within Mexico's restricted zone to himself and his family members, allegedly to comply with Mexican law. The defendant argued that the plaintiffs' land contract was illegal under Article 27 of the Mexican Constitution, which prohibits foreigners from directly owning land in the restricted zone, and that the contract was therefore unenforceable in United States courts. In upholding the judgment, the Ninth Circuit determined that

the district court had pendent jurisdiction over the fraud claim and further noted that the contract's illegality under Mexican law did not preclude the plaintiffs from pursuing a state law fraud claim based on the defendant's representations that the contract would be legal. *Brady*, 51 F3d at 816-18. The *Brady* opinion does not directly address whether Article 27 gives Mexican courts exclusive jurisdiction over claims relating to real property. However, its conclusion that the federal district court had jurisdiction over the plaintiffs' fraud claim is incompatible with the interpretation of Article 27 that defendant advances here.

In *Stockton v. Ortiz*, 47 Cal App 3d 183, 120 Cal Rptr 456, 463 (1975), the California Court of Appeal discussed the merits of contract and shareholder derivative claims involving Mexican land and held that, because the contract at issue would be considered illegal in Mexico, California's rules of comity precluded enforcement of the contract in California. The court mentioned Article 27 in its discussion, but its conclusion that the contract was illegal rested primarily on another basis. *Stockton*, 120 Cal Rptr at 462-63 and 463 n 3. Nonetheless, implicit in the decision on the merits was an affirmation of the California court's jurisdiction over the parties' contractual dispute.[3] The fact that the court was aware of Article 27 and nonetheless addressed the merits of the parties' contract claim implies that the court did not view the constitutional provision as vesting exclusive jurisdiction over such contractual disputes in Mexican courts.

A few years after *Stockton*, the California Supreme Court undertook a more in-depth analysis of Article 27 in *Wong v. Tenneco, Inc.*, 39 Cal 3d 126, 216 Cal Rptr 412, 702 P2d 570 (1985). In *Wong*, the court declined to enforce a contract between a California produce grower, who attempted to hold Mexican farmland illegally, and his lending institution, which eventually began to treat the landowner's Mexican "front men" as the true owners of the enterprise. Although it does not appear that the land at issue in *Wong* was in the

---

[3] Although the court's opinion in *Stockton* does not indicate that the court considered any jurisdictional issues, it is a common practice for courts to determine that they have jurisdiction before proceeding to the merits of a case. We assume that the California courts followed that practice in *Stockton*.

restricted zone, the court noted that the plaintiff had made no effort to obtain permission to own the land from the Ministry of Foreign Affairs, as required by Article 27. *Wong*, 702 P2d at 576. It described Article 27 as follows:

> "Since 1917, Mexico's Constitution has expressly prohibited alien ownership or control of Mexico's land or waters. This restriction represents that country's abiding commitment to the preservation and management of scarce resources for the benefit of the Mexican people * * *.

> "* * * [N]either the Constitution nor the statute wholly preclude foreign investment in Mexico's resources. Foreigners who agree to respect the autonomy and ultimate authority of the Mexican government may acquire ownership interests in many of the country's natural resources. * * *

> "Consistent with our duty to respect Mexico's right to determine her own internal policies, we should defer to her laws implementing those policies when they are directly implicated in the case at hand."

*Wong*, 702 P2d at 575 (footnote omitted). It is evident from the foregoing passage that the California Supreme Court in *Wong* sought to apply Article 27 and that it did not view the provision as granting Mexican courts exclusive jurisdiction over land contract disputes. If it had viewed Article 27 as divesting it of jurisdiction, it would not have reached the question of the illegality of the contract under Mexican law.

In short, our research has not disclosed any interpretation of Article 27 that suggests that it confers on Mexican courts exclusive jurisdiction over the type of private contractual dispute at issue here. Moreover, defendant has not identified any authority that so concludes. We therefore conclude that Article 27 does not affect jurisdiction by an Oregon court over plaintiffs' case. The trial court erred in relying on Article 27 to dismiss the case for lack of subject matter jurisdiction.

■ Before moving on to the trial court's dismissal of the case under the inconvenient forum doctrine, we pause to address defendant's argument that a clause in the parties' contract required that all disputes relating to it be litigated in Mexico. As translated, the clause states:

"For the interpretation, fulfillment and recission (annulment or cancellation) of the present contract, the parties will submit to the jurisdiction and competence of the Courts of the City of _____, clearly waiving (resigning) to any law of their domicile which in the future may be asserted."

Defendant argues that an agreement to submit to the "competence" of the courts in a certain city means that the parties agreed to litigate any disputes regarding the contract in the courts of that city; in effect, he argues that the provision is a forum selection clause. We need not determine whether that is the meaning of the clause, because the name of the city was never filled in. On this record, the effect of that omission is that the clause can have no effect whatsoever. Neither Article 27 nor the above-quoted clause deprived the trial court of subject matter jurisdiction, and neither provision requires this action to be litigated in a Mexican court.

Finally, we address plaintiffs' argument that the trial court erred in applying the inconvenient forum doctrine to dismiss the case. The inconvenient forum doctrine allows a court to "decline jurisdiction in exceptional circumstances." *Gulf Oil Corporation v. Gilbert*, 330 US 501, 504, 67 S Ct 839, 91 L Ed 1055 (1947). Under the doctrine, a court may dismiss an action when, in spite of the existence of "subject matter jurisdiction, personal jurisdiction, and proper venue, trying the action elsewhere would 'best serve the convenience of the parties and the ends of justice.' " Note, *Review and Appeal of Forum Non Conveniens and Venue Transfer Orders*, 59 Geo Wash L Rev 715, 716 (1991) (quoting *Koster v. (American) Lumbermens Mut. Casualty Co.*, 330 US 518, 527, 67 S Ct 828, 91 L Ed 1067 (1947) (footnote omitted)). We will assume, for purposes of this case, that the doctrine can be applied in Oregon courts.[4]

Here, the trial court apparently engaged in the balancing test set out by the Supreme Court in *Piper Aircraft Co. v. Reyno*, 454 US 235, 257-61, 102 S Ct 252, 70 L Ed 2d 419 (1981), to determine whether plaintiffs' chosen forum was an

---

[1] *See Horner v. Pleasant Creek Mining Corp.*, 165 Or 683, 703-04, 107 P2d 985, 109 P2d 1044 (1940) (*dictum* on court discretion to decline jurisdiction of case involving claims by Washington resident against Washington defendants).

inconvenient one. After concluding that several of the relevant factors weighed in favor of dismissal, the court dismissed the case. Although Oregon has not, as of yet, adopted the *Piper* balancing test as the proper test to use in applying the inconvenient forum doctrine, we do not take issue with the trial court's use of the test. What the trial court and defendant failed to recognize, however, is that a prerequisite to its use is the existence of a viable alternative forum. *See id.* at 254 n 22 ("At the outset of any [inconvenient forum] inquiry, the court must determine whether there exists an alternative forum."); *Gulf Oil Corporation*, 330 US at 506-07 ("In all cases in which the doctrine of [inconvenient forum] comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for the choice between them."). Here, both parties agree that, at the time that defendant sought to dismiss the action, the statute of limitations had run on any claims that plaintiffs could have brought against defendant in Mexican courts. Therefore, it would appear that Mexico was not a viable alternative forum and, as a consequence, that the court should not have applied the *Piper* balancing test to determine whether Mexican courts should be preferred over the Oregon court chosen by plaintiffs.

■ Defendant nonetheless suggests that plaintiffs should bear the consequence of the lack of an alternative forum because they could have brought their case in Mexico, had they acted soon enough. In the alternative, defendant argues that we can affirm the trial court's dismissal if we condition it on acceptance of the offer that defendant made during oral argument to us to waive the statute of limitations. We reject both arguments. The fact that plaintiffs could have brought their case in Mexico had they acted quickly enough does not mean that, at the time that defendant sought dismissal, Mexico was a viable alternative forum. The prerequisite to the application of the inconvenient forum doctrine is the *present* existence of an adequate alternative forum. *See, e.g.*, *Piper Aircraft Co.*, 454 US at 254 n 22 ("[T]he court must determine whether *there exists* an alternative forum.") (emphasis added). Because the forum that defendant identified as an alternative forum was not a viable one, and the trial court did not identify any other adequate alternative

forum, it committed an error of law in applying the inconvenient forum doctrine.

We reach that conclusion notwithstanding defendant's belated offer to waive the statute of limitations defense in Mexico. Defendant did not make that offer below, and he points us to no authority that indicates that Mexican courts would be required to accept it. We cannot affirm the dismissal on that basis.

As a final matter, we address plaintiffs' request that we review the trial court's denial of their motion to amend their complaint. Based on its decision to dismiss the case, the trial court denied plaintiffs' motion to amend as moot. Because we are reversing the judgment dismissing the case, plaintiffs will have the opportunity to renew their motion on remand. Hence, it is not appropriate to address the merits of their motion here.

Reversed and remanded.