Argued and submitted November 6, 2012, general judgment reversed and remanded, supplemental judgment for attorney fees reversed April 30, 2014

PNC MULTIFAMILY CAPITAL INSTITUTIONAL
FUND XXXIV LIMITED PARTNERSHIP;
PNC Multifamily Capital Institutional
Fund XXIX Limited Partnership;
and Columbia Housing SLP Corporation,
*Plaintiffs-Appellants,*

*v.*

AOH-REGENT LIMITED PARTNERSHIP;
AOH-Regent GP, Inc.; American Opportunity for
Housing-James Park Limited Partnership;
James Park Corporation; American Opportunity for
Housing-Greenview Manor Limited Partnership;
AOH-Greenview Manor, GP, Inc.;
and American Opportunity for Housing, Inc.,
*Defendants-Respondents.*

Multnomah County Circuit Court
100101157; A147513

329 P3d 773

Charles L. Perry, Texas, argued the cause for appellants. With him on the briefs were Andrews Kurth LLP,

and Gregory J. Miner and Bateman Seidel Miner Blomgren Chellis & Gram, P.C.

Peter D. Hawkes argued the cause for respondents. With him on the brief was Lane Powell PC.

Before Armstrong, Presiding Judge, and Duncan, Judge, and Brewer, Judge pro tempore.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Plaintiffs appeal a general judgment dismissing their breach of contract and declaratory relief action against defendants because of lack of subject matter and personal jurisdiction. They also appeal a supplemental judgment awarding attorney fees to defendants. We conclude that the court erred in determining that it lacked subject matter jurisdiction over the action. We further conclude that the theory that defendants advance on appeal to justify the trial court's decision regarding personal jurisdiction—that it would be unreasonable to enforce their consent to jurisdiction in Oregon—was not the basis upon which the trial court ruled. And, because the record might have developed differently if defendants had raised that issue in their motion to dismiss, we will not affirm the trial court's ruling under a "right for the wrong reason" rationale. We also decline to resolve the other grounds for dismissal raised by defendants that the trial court expressly did not reach—that is, *forum non conveniens*, improper joinder, and failure to state ultimate facts sufficient to constitute a claim. Accordingly, we reverse and remand the general judgment of dismissal. We also reverse the supplemental judgment awarding defendants attorney fees.

This case involves three Florida limited partnerships: the AOH-Regent Limited Partnership (AOH-Regent Partnership); the American Opportunity for Housing-James Park Limited Partnership (AOH-James Park Partnership); and the American Opportunity for Housing-Greenview Manor Limited Partnership (AOH-Greenview Partnership). Each limited partnership owns a low-income apartment project in Florida built with tax-credit financing under the Low Income Housing Tax Credit program administered by the Florida Housing Finance Corporation.

Plaintiffs are the limited partners in those partnerships.[1] Defendants are the limited partnerships; the

---

[1] Specifically, plaintiff PNC Multifamily Capital Institutional Fund XXXIV Limited Partnership (Fund XXXIV), a Delaware limited partnership, is the investment limited partner in two of the partnerships: the AOH-Regent Partnership and the AOH-Greenview Partnership. Plaintiff PNC Multifamily Capital Institutional Fund XXIX Limited Partnership (Fund XXIX), also a Delaware limited partnership, is the investment limited partner in the AOH-James Park

general partners of the limited partnerships; and the parent entity, American Opportunity for Housing, Inc. (AOH), which guaranteed the obligations of the general partners in each instance.[2] AOH is a Kansas nonprofit corporation that develops affordable multi-family housing. It has over 15,000 units of housing located in several states: Florida, Alabama, Arkansas, Illinois, and Pennsylvania. As noted, the three projects involved in this case are located in Florida—two (Greenview and James Park) in St. Petersburg, Pinellas County, and one (Regent) in Jacksonville, Duval County.

Plaintiffs brought breach of contract claims against defendants, alleging that defendants had breached their contractual obligations to repurchase plaintiffs' limited partnership interests on the occurrence (or, to be more precise, nonoccurence) of certain events. They also sought declaratory relief, asking the court to "declare the rights of the parties under the various contracts." For purposes of this appeal, it is not necessary for us to describe in detail the specifics of the limited-partnership agreements and plaintiffs' claims. Suffice it to say that each of the respective partnership agreements provides for the repurchase of plaintiffs' limited-partnership interests upon the satisfaction of certain conditions. The agreements also each provide that the repurchase obligation is an obligation of that partnership and that the general partner of each partnership guarantees the repurchase obligation. The repurchase obligations of the general partners are, in turn, guaranteed by AOH under separate guaranty agreements.[3]

As a remedy for their breach of contract claims, the investment limited-partner plaintiffs in each limited

---

Partnership. Plaintiff Columbia Housing SLP Corporation (Columbia Housing), an Oregon corporation, is the other, special limited partner in each of the three partnerships. Unless otherwise noted, we refer to them collectively as "plaintiffs" throughout this opinion.

[2] Specifically, the Regent defendants are the AOH-Regent Partnership, AOH-Regent GP, Inc., and AOH; the James Park defendants are the AOH-James Park Partnership, James Park Corporation, and AOH; and the Greenview defendants are the AOH-Greenview Partnership, AOH-Greenview Manor, GP, Inc., and AOH. Unless otherwise specified, we refer to those parties collectively as "defendants."

[3] Thus, there is the AOH-Regent Guaranty, the AOH-James Park Guaranty, and the AOH-Greenview Guaranty.

partnership, *see* 262 Or App at 505 n 1 (identifying the investment limited partners), sought to recover against the applicable defendants the purchase price—in the amount of plaintiffs' alleged capital contributions[4]—plus interest and the costs and expenses of the repurchase. Plaintiff Columbia Housing, the special limited partner in each of the partnerships, sought to recover its alleged contributions,[5] plus costs and expenses. All plaintiffs further sought full release from any future obligation to make capital contributions and "interest at 'an interest rate of the lesser of (a) Prime Rate plus 4%, compounded monthly or (b) the maximum rate permissible by law' from the conclusion of the 30-day period after the repurchase notice until paid."

Each of the three limited-partnership agreements contains, essentially,[6] the following provision:

> "Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State. Each of the undersigned irrevocably (i) agrees that any suit, action or other legal proceeding arising out of this Agreement or any of the transactions contemplated hereby shall be brought in the courts of either the State of Oregon or State of Florida or the courts of the United States of America for the District of Oregon or the District of Florida; (ii) consents to the jurisdiction of each such court in any suit, action, or proceeding; and (iii) waives any objection which he or it may have to the laying of venue of any such suit, action or proceeding in each of such courts."

(Underscoring in original.) Similarly, each of the AOH guaranties includes the following:[7]

> "Personal Jurisdiction and Venue. The Guarantor hereby submits to personal jurisdiction as provided in this Section 19 for the enforcement of this Guaranty and waives any and

---

[4] The specific amounts sought are as follows: (1) AOH-Regent Partnership—$6,133,124; (2) AOH-James Park Partnership—$1,875,246; and (3) AOH-Greenville Partnership—$1,147,843.

[5] That contribution was $10 in each limited partnership.

[6] The AOH-Greenview Limited Partnership Agreement lists the Florida courts before the Oregon courts; in all other respects, the provisions are identical in all three partnership agreements.

[7] Again, the only difference among the agreements is that the AOH-Greenview Guaranty lists the Florida courts before the Oregon courts.

all personal rights to object to such jurisdiction for the purposes of litigation to enforce this Guaranty. The Guarantor hereby consents to the jurisdiction of the courts of either the States of Oregon or Florida or the courts of the United States of America for the Districts of Oregon or Florida, in any action, suit, or proceeding which any Limited Partner may at any time wish to file in connection with this guaranty or any related matter. The Guarantor hereby agrees that an action, suit, or proceeding to enforce this Guaranty may be brought in any state or federal court in the States of Oregon or Florida and hereby waives any objection which the Guarantor may have to the laying of the venue of any such action, suit, or proceeding in any such court[.]"

(Underscoring in original.)

Defendants moved to dismiss plaintiffs' amended complaint for, among other grounds,[8] "lack of subject matter and personal jurisdiction and proper venue" under ORCP 21 A(1) and (2);[9] alternatively, they requested that the case be transferred to an appropriate state court in Florida[10] on grounds of *forum non conveniens*. The trial court ultimately issued orders granting defendants' motions to dismiss based on a lack of subject matter and personal jurisdiction. Defendants then moved for entry of judgment, in which they contended, among other things, that they were entitled to recover their costs, including "reasonable attorney fees pursuant to the terms of the parties' contractual agreements

---

[8] Specifically, the Regent defendants also moved to dismiss for failure to join an indispensable party (ORCP 21 A(7), 29); improper joinder of claims (ORCP 28); failure to state a claim for breach of contract or damages (ORCP 21 A(8)); failure to state a claim for breach of guaranty as to defendant AOH (ORCP 21 A(8)); and failure to state a claim for declaratory relief (ORCP 21 A(8)). The James Park and Greenview defendants also moved to dismiss for improper joinder of claims (ORCP 28); failure to state a claim for breach of contract or damages (ORCP 21 A(8)); failure to state a claim for breach of guaranty as to defendant AOH (ORCP 21 A(8)); and failure to state a claim for declaratory relief (ORCP 21 A(8)).

[9] ORCP 21 A provides, in part:

"Every defense, in law or fact, to a claim for relief in any pleading * * * shall be asserted in the responsive pleading thereto, except that the following defenses may at the option of the pleader be made by motion to dismiss: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person[.]"

[10] The Regent defendants requested that the case against them be transferred to Duval County, Florida; the James Park and Greenview defendants requested that the claims against them be transferred to Pinellas County, Florida.

and ORS 20.096." After a further hearing on that motion, the court entered a general judgment dismissing plaintiffs' amended complaint. It explained:

> "After considering the briefing, exhibits and oral arguments submitted by the parties, the court granted the motions to dismiss, finding that it lacked subject matter jurisdiction for the reasons set forth in defendants' briefing and at oral argument. The court also found, alternatively, that it lacked personal jurisdiction for the reasons articulated by the defendants. Based on these determinations, the court found it unnecessary to reach defendants' other motions, including those presenting the grounds of *forum non conveniens*, improper joinder, and failure to state ultimate facts sufficient to constitute a claim."

The judgment dismissed plaintiffs' amended complaint "with prejudice as to the jurisdictional issues of subject matter and personal jurisdiction decided by the court, but without prejudice as to the merits of plaintiffs' claims[.]" It further ordered that the dismissal "shall not bar plaintiffs from pursuing their claims in Florida before any court with jurisdiction" and awarded defendants costs and reasonable attorney fees "in an amount to be determined by the court pursuant to ORCP 68." Subsequently, the court entered a supplemental judgment awarding defendants costs and $50,000 in attorney fees. Plaintiffs appeal both judgments.

On appeal, plaintiffs contend that the trial court erred in (1) granting defendants' motions to dismiss, and (2) awarding defendants their attorney fees. Regarding their first contention, plaintiffs argue that the trial court had both subject matter and personal jurisdiction and thus erred in dismissing the case on those bases. We consider each in turn, beginning with subject matter jurisdiction.

Whether a court has subject matter jurisdiction is a legal question. *Speciality Risk Services v. Royal Indemnity Co.*, 213 Or App 620, 624, 164 P3d 300 (2007). As we explained in *Speciality Risk Services*,

> "[s]ubject matter jurisdiction exists when the constitution or the legislature authorizes a specific court to do something about the specific kind of dispute at issue. *School Dist. No. 1, Mult. Co. v. Nilsen*, 262 Or 559, 566, 499 P2d

1309 (1972). Under the Oregon Constitution, circuit courts have subject matter jurisdiction over all actions unless a statute or rule of law divests them of jurisdiction. *State v. Terry*, 333 Or 163, 186, 37 P3d 157 (2001), *cert den*, 536 US 910, 122 S Ct 2368, 153 L Ed 2d 189 (2002); *see* Or Const, Art VII (Original), § 9 ('All judicial power, authority, and jurisdiction not vested by this Constitution, or by laws consistent therewith, exclusively in some other Court shall belong to the Circuit Courts[.]'); Or Const, Art VII (Amended), § 2 (retaining the jurisdictional scheme set out in original Article VII)."

213 Or App at 624-25 (second brackets in *Specialty Risk Services*).

Defendants do not refute—indeed, it is irrefutable—that Oregon circuit courts generally have subject matter jurisdiction over breach of contract actions. *See Black v. Arizala*, 337 Or 250, 263, 95 P3d 1109 (2004) (so noting). Rather, what defendants contended below—and continue to argue on appeal—is that the Oregon court lacks jurisdiction over the subject matter because the relief that plaintiffs seek will, if successful, effect a dissolution of the parties' limited partnerships, which, they further contend, is subject to the exclusive jurisdiction of Florida courts.[11] Defendants' argument is as follows: If plaintiffs were to obtain a court-ordered repurchase of their interests in the limited partnerships as sought in their complaint, no limited partners would remain. And, because Florida law requires a limited partnership to have at least one general partner and one limited partner, *see* Fla Stat § 620.1102(12) (2006) (defining "[l]imited partnership" to mean, in part, "an entity having one or more general partners and one or more limited partners, which is formed under this act by two or more persons"), removal of all limited partners would constitute an effective judicial dissolution of the limited partnership.

Plaintiffs refute that logic. They contend, first, that, if their interests are repurchased, each partnership will nonetheless retain a limited partner because the purchaser—either the applicable general partner or AOH—would

---

[11] Defendants also argued below that, although styled as a breach of contract action, plaintiffs, in effect, sought rescission of the partnership agreements. They do not renew that argument in defending the trial court's ruling on appeal.

acquire the limited-partnership interests, thus meeting any requirement that a limited partnership include one or more limited partners. Specifically, according to plaintiffs, purchase by AOH would result in a separate, but new, limited partner (in each limited partnership), and purchase by the general partner would mean that "that entity would occupy dual capacities, as both a general partner and as a limited partner, which is permitted under Florida law." *See* Fla Stat § 620.1113 (2006) ("A person may be both a general partner and a limited partner."). Defendants remonstrate that the agreements contemplate only that the general partners and AOH will guarantee payment "on *behalf* of the partnership," not that, "in doing so, either entity would assume ownership of the partnership interests." (Emphasis in original.) Moreover, defendants contend, even if the general partners did assume ownership of the limited partners' interests, the limited partnership "would still need to be dissolved" because, under Fla Stat § 620.1102(12) (quoted above), there "still must be *at least two separate persons* in a limited partnership." (Emphasis in original.)

We need not resolve that dispute between the parties because we agree with plaintiffs' second argument—that, even if the partnerships are left without a limited partner as a result of a court-ordered repurchase of plaintiffs' limited-partnership interests, that does not—as defendants contend—effect a judicial dissolution of the limited partnership under Florida law. As support for their argument in that regard, defendants rely, in part, on Fla Stat § 620.1802 (2006), which provides, in full:

> "On application by a partner, the circuit court may order dissolution of a limited partnership if it is not reasonably practicable to carry on the activities of the limited partnership in conformity with the partnership agreement."

Because each partnership agreement in this case establishes the parties' intentions to proceed as a limited partnership, without limited partners, defendants argue, it is "not reasonably practicable to carry on the activities of the limited partnership in conformity with the partnership agreement," resulting in judicial dissolution under that statute. The problem with defendants' argument is that Fla Stat

§ 620.1802 (2006) *authorizes*—but does not require—the court to dissolve a limited partnership in that circumstance and then, as plaintiffs correctly point out, only *"on application by a partner."* (Emphasis added.) It does not, as a matter of course, operate to dissolve a limited partnership upon the absence of a limited partner, contrary to defendants' suggestion otherwise.

Nor would the repurchase of the limited partners' interests in the partnerships necessarily result in a *nonjudicial* dissolution of those partnerships. Although defendants did not rely on it below, Fla Stat § 620.1801 (2006), pertaining to nonjudicial dissolution, provides, as relevant:

"(1)   Except as otherwise provided in [Fla Stat §] 620.1802, a limited partnership is dissolved, and its activities must be wound up, only upon the occurrence of any of the following:

"(a)   The happening of an event specified in the partnership agreement;

"(b)   The consent of all general partners and of all limited partners;

"(c)   After the dissociation of a person as a general partner:

"* * * * *

"(d)   *The passage of 90 days after the dissociation of the limited partnership's last limited partner, unless before the end of the period the limited partnership admits at least one limited partner*[.]"

(Emphasis added.)

Thus, Fla Stat § 620.1801 (2006) operates to dissolve a limited partnership, but *only if* a new limited partner is *not* admitted within 90 days after the dissociation of the last limited partner. Even assuming a court-ordered repurchase of plaintiffs' limited-partnership interests results in a "dissociation" of the limited partners, a matter that defendants do not address, dissolution of the partnership is not automatic. Instead, nonjudicial dissolution depends on the satisfaction of a further condition—*viz.*, that a new limited partner not be admitted within 90 days.

In sum, even if plaintiffs prevail in this action, there are uncertain contingencies that must occur before the limited partnerships would be dissolved, either judicially or nonjudicially, under Florida law. The fact that there is a mechanism in Florida law by which a party may later seek dissolution *if* certain criteria are satisfied, Fla Stat § 620.1802 (2006), or that the relief plaintiffs seek *may* have consequences that lead to dissolution at some future time, Fla Stat § 620.1801 (2006), does not compel the conclusion that plaintiffs are seeking, not to enforce a contractual right, but to dissolve their Florida limited partnerships. In other words, although it *may* set the wheels in motion, we are not persuaded that the relief plaintiffs seek for their breach of contract claims—repurchase of their limited-partner interests—will, as defendants contend, "effect a dissolution of their partnerships" which, in defendants' view is relief beyond the subject matter jurisdiction of an Oregon court to grant.[12] The trial court erred in concluding otherwise.

We turn to the question of personal jurisdiction. "Plaintiffs have the burden of alleging and proving facts sufficient to establish personal jurisdiction." *Portland Trailer & Equipment v. A-1 Freeman Moving*, 166 Or App 651, 654, 5 P3d 604, *adh'd to as modified on recons*, 168 Or App 654, 4 P3d 741 (2000). A court may consider whether to dismiss a complaint for lack of personal jurisdiction under ORCP 21 A(2) "on the basis of facts drawn both from the complaint and 'matters outside the pleading, including affidavits, declarations and other evidence.'" *Black*, 337 Or at 265 (quoting ORCP 21 A). We construe pleadings and affidavits liberally in favor of jurisdiction. *Ram Technical Services, Inc. v. Koresko*, 240 Or App 620, 636, 247 P3d 1251 (2011).

"Where, as here, the trial court made no express findings, we assume that the court found facts consistent with its judgment and review the court's assumed factual findings to determine whether they are supported by any competent evidence. Once the jurisdictional facts are established, we

---

[12] In their reply brief, plaintiffs, apparently for the first time, dispute defendants' premise that a Florida court would have exclusive subject matter jurisdiction over a dissolution of the limited partnerships in this case. Given our conclusion, we need not address that argument.

review the determination of personal jurisdiction for errors of law."

*Id.* (internal quotation marks, citations, and brackets omitted).

In their complaint, plaintiffs alleged jurisdiction over defendants in Oregon on the sole basis that defendants had contractually consented to jurisdiction under the provisions of the partnership agreements and guaranties quoted above, *see* 262 Or App at 507-08, thus conferring jurisdiction under ORCP 4 A(5). ORCP 4 provides, in part:

"**Personal jurisdiction.** A court of this state having jurisdiction of the subject matter has jurisdiction over a party served in an action pursuant to Rule 7 under any of the following circumstances:

"**A. Local presence or status.** In any action, whether arising within or without this state, against a defendant who when the action is commenced:

"* * * * *

"A(5) *Has expressly consented to the exercise of personal jurisdiction over such defendant.*"

(Boldface in original; emphasis added.)

In moving to dismiss plaintiffs' complaint on the basis of lack of personal jurisdiction, defendants contended in the trial court that the relevant contractual provisions—which they describe as choice of law provisions—do not reflect their express consent to personal jurisdiction in Oregon.[13] In addition, they argued that "a choice of law provision is only one factor to be considered in the minimum contacts analysis required as a condition of jurisdiction," and, under that analysis, the exercise of personal jurisdiction would not comport with due process because (1) "[d]efendants do not have minimum contacts in Oregon;" (2) they "have not

---

[13] At the hearing on the motions, defendants refined that argument to contend that the provision in the *partnership agreements* cannot be construed as "clear and express consent" to personal jurisdiction in Oregon (and that any ambiguity must be construed against plaintiffs) because, *unlike the provision in the guaranty agreements*, the partnership agreements do not explicitly refer to *personal* jurisdiction. Thus, defendants essentially conceded consent with respect to AOH, the guarantor defendant.

purposefully availed themselves of the protections of" the Oregon courts; and (3) "Oregon has no interest in settling th[e] dispute." (Boldface omitted; capitalization altered.) In response, plaintiffs continued to assert that the contractual provisions reflect defendants' express consent to personal jurisdiction; they also contended that such provisions are *prima facie* enforceable, citing *The Bremen v. Zapata Off-Shore Co.*, 407 US 1, 15, 92 S Ct 1907, 32 L Ed 2d 513 (1972), and *Reeves v. Chem Industrial Co.*, 262 Or 95, 98-101, 495 P2d 729 (1972). At the hearing on defendants' motions to dismiss, plaintiffs further responded that a minimum-contacts due-process analysis is simply inapposite in the face of defendants' express consent to jurisdiction.

As noted, the trial court granted defendants' motions to dismiss based on lack of personal jurisdiction "for the reasons articulated by the defendants." It did not explain its reasoning further; nor did it make any findings.

On appeal, defendants do not attempt to defend the trial court's decision on either of the rationales that they had advanced to the trial court—and on which, apparently, the trial court granted their motions to dismiss[14]—*viz.*, that they had not expressly consented to jurisdiction by signing the limited-partnership and guaranty agreements or that their consent is just one facet of the minimum-contacts analysis, the balance of which weigh against jurisdiction.[15] Rather,

[14] At the hearing on the motions to dismiss, defendants, in rebuttal to plaintiffs' contention about enforceability, did argue that a forum selection clause is only *prima facie* enforceable and that, "even if Your Honor were to find that there had been a waiver of personal jurisdiction, that Your Honor should not enforce it because of the other arguments and evidence presented." However, without findings by the trial court or a further explanation of its reasoning, we cannot assume, based on those brief comments, that, in dismissing the case for lack of personal jurisdiction "for the reasons articulated by the defendants," the court concluded that defendants had contractually consented to personal jurisdiction but that enforcing the contractual consent provisions against defendants would be unjust and unreasonable.

[15] Nor would that position be tenable. First, although the provision in the partnership agreements is titled simply "<u>Governing Law</u>," it expressly provides that each party "(i) agrees that *any suit, action or other legal proceeding arising out of this Agreement or any of the transactions contemplated hereby shall be brought in the courts of either the State of Oregon or State of Florida* \* \* \*; (ii) *consents to the jurisdiction of each such court in any suit, action, or proceeding*; and (iii) waives any objection which he or it may have to the laying of venue of any such suit, action or proceeding in each of such courts." (Underscoring in original; emphasis added.) Although the guaranty is more explicit on the question,

they now contend that the contractual provisions granting consent to personal jurisdiction in Oregon *cannot be enforced* because doing so would be "unfair or unreasonable," relying on *Reeves.* Because that is a qualitatively different theory of dismissal from that on which defendants relied in the trial court, we understand defendants to be asking us to affirm the trial court's ruling under a "right for the wrong reason" principle. *See Outdoor Media Dimensions Inc. v. State of Oregon,* 331 Or 634, 659-60, 20 P3d 180 (2001). That principle permits us—as a matter of discretion—to affirm the ruling of the trial court on an alternative basis when certain conditions are met. *Id.* Specifically, it requires

> "(1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below. In other words, even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance."

*Id.* at 659 (emphasis in original). As explained below, those requirements are not satisfied in this case.

In *Reeves,* the Supreme Court held that contractual clauses conferring exclusive jurisdiction in the courts of another state were enforceable, provided they were not "unfair or unreasonable." 262 Or at 101. It noted also that clauses in "contracts of adhesion"—that is, "'take-it-or-leave-it'-contract[s that are] the product of unequal bargaining

providing, in part, that "[t]he Guarantor hereby submits to personal jurisdiction as provided in this Section 19 for the enforcement of this Guaranty and waives any and all personal rights to object to such jurisdiction for the purposes of litigation to enforce this Guaranty," we conclude that all defendants have, by virtue of the respective contractual provisions, expressly consented to personal jurisdiction in Oregon.

Second, the constitutional "minimum contacts" analysis under *Internat. Shoe Co. v. Washington,* 326 US 310, 316, 66 S Ct 154, 90 L Ed 95 (1945), is inapposite in this context—that is, where defendants have expressly *consented* to personal jurisdiction in Oregon as provided in ORCP 4 A(5).

power between the parties"—fall into that category. *Id.* at 101. Subsequently, in *Nike USA, Inc. v. Pro Sports Wear, Inc.*, 208 Or App 531, 537, 145 P3d 321 (2006), we applied *Reeves* in the context of a motion to dismiss for lack of personal jurisdiction, holding that forum-selection clauses in commercial contracts are *prima facie* enforceable and *"will be disregarded only where the evidence shows that enforcement would be unfair and unreasonable."* (Emphasis added.)

Thus, the relevant inquiry under *Reeves* is very fact dependent. Here, as noted, the trial court did not make any findings related to the fairness and reasonableness of enforcing defendants' consent to personal jurisdiction in Oregon. Thus, we cannot say that the alternative basis for affirmance would be consistent with the trial court's view of the evidence. Nor can we say that the record is materially the same as it would have been had defendants raised the enforceability issue in their motion to dismiss.

In particular, defendants now argue that enforcing their consent to personal jurisdiction would be unreasonable, in part, because the relevant information and witnesses "are located almost exclusively in Florida," where the housing developments are located; and "litigation in Oregon would be highly inconvenient for defendants, none of [which] maintains an office in Oregon, conducts business in Oregon, has established an agency in Oregon for any portion of its business, or owns property in Oregon," but "all of [which] have a strong connection to Florida." Plaintiffs, on the other hand, remonstrate that defendants have not demonstrated that litigation in Oregon "'will be so gravely difficult and inconvenient that [they] will for all practical purposes be deprived of [their] day in court.'" (Quoting *The Bremen*, 407 US at 18.)[16] They point out that defendants "are part of a sophisticated and far-flung business enterprise, with over 15,000 multi-family housing units, spread across several non-contiguous states"; the principal place of business of each of the defendants is in Texas, not Florida;

---

[16] Although both plaintiffs and defendants seem to tacitly accept that the principles announced in *MS/Bremen* (and other federal cases following it) apply here, neither explains why that is the case, nor is it readily apparent to us. In any event, that, too, would be a question for the trial court to confront in the first instance.

and defendant AOH is a Kansas, not Florida, corporation. Moreover, plaintiffs emphasize that Portland, Oregon, is the home of plaintiff Columbia Housing, where many of the personnel and records of plaintiffs Fund XXIV and Fund XXIX are located, including anticipated witnesses and documentary evidence. Those are factual issues that must be addressed in the first instance by the trial court.

Moreover, as the parties recognize, the "enforceability" analysis implicates some of the same concerns inherent in defendants' motion to transfer the case on grounds of *forum non conveniens*—a determination that the trial court expressly declined to make in light of its conclusion that it lacked jurisdiction. *See, e.g., Novich v. McClean*, 172 Or App 241, 251, 18 P3d 424, *rev den*, 332 Or 137 (2001) (under the doctrine of *forum non conveniens*, a court may dismiss an action when, despite the existence of subject matter jurisdiction, personal jurisdiction, and proper venue, trying the case elsewhere "would best serve the convenience of the parties and the ends of justice" (internal quotation marks omitted)). For all of those reasons, we conclude that application of the "right for the wrong reason" doctrine is not appropriate here, and we will not affirm the trial court's dismissal of the case on that basis.

For similar prudential reasons, we decline to consider the alternative grounds for dismissal that the trial court did not reach. Finally, because the supplemental judgment for attorney fees was predicated on the general judgment of dismissal, we reverse that judgment as well. *See* ORS 20.220(3)(a) (providing that, when a party appeals a judgment to which an attorney-fee award relates, "[i]f the appellate court reverses the judgment, the award of attorney fees or costs and disbursements shall be deemed reversed").

General judgment reversed and remanded; supplemental judgment for attorney fees reversed.