200 July 30, 2025 No. 669

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

EMPIRE BUILDING COMPANY, LLC,
*Plaintiff-Appellant,*

*v.*

PBRELF I, LLC,
nka BMRK Lending, LLC,
*Defendant-Respondent,*

*and*

PETRA MEMORY CARE, LLC,
*Defendant.*

PBRELF I, LLC,
nka BMRK Lending, LLC,
*Third Party Plaintiff-Respondent,*

*v.*

DANIEL MURESAN,
*Third Party Defendant-Appellant.*

Clackamas County Circuit Court
17CV44935; A178492

Todd L. Van Rysselberghe, Judge.

Argued and submitted January 22, 2025.

Christopher K. Dolan argued the cause for appellants. Also on the brief were Daniel L. Steinberg and Jordan Ramis PC.

Drew L. Eyman argued the cause for respondent. Also on the brief were Amit D. Ranade and Snell & Wilmer LLP.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

AOYAGI, P. J.

Reversed and remanded.

**AOYAGI, P. J.**

Empire Building Company, LLC (Empire) and its sole member Daniel Muresan (collectively Builder) appeal a general judgment and supplemental judgment in favor of PBRELF I, LLC, nka BMRK Lending, LLC (Lender). In four assignments of error, Builder claims that the trial court erred by (1) "sustaining [Lender's] fraud claim, which was brought outside of the applicable statute of limitations"; (2) awarding $625,369.00 in damages to Lender; (3) excluding David Smith from testifying; and (4) awarding $568,473.86 in attorney fees and costs to Lender. We agree with Builder that the trial court erred in awarding damages, where the court found that Lender failed to prove the damages that it alleged and instead awarded damages under an unpleaded theory lacking evidentiary support. Accordingly, we reverse both the general and supplemental judgments, and we need not address the first and third assignments of error.

## FACTS

Muresan was a member of Petra Memory Care (PMC), a limited liability company formed to develop and operate a memory care facility on a parcel of land owned by PMC.[1] PMC obtained a $2,375,000 construction loan from Lender, secured by a trust deed on the property and a personal guaranty by Muresan, Empire, and others. The loan amount was later increased by over $800,000. The memory care facility was built and opened for business, but it proved unprofitable and ceased operations within the first year. PMC defaulted on the loan. PMC was administratively dissolved in March 2017.

Lender initiated nonjudicial foreclosure proceedings. On June 16, 2017, Empire filed a construction lien on the property for $1,284,866. On June 23, 2017, the foreclosure sale took place, and Lender made a successful credit bid for the property for $4,200,000. Lender later sold the property for $4,900,000.

Meanwhile, a few months after the nonjudicial foreclosure sale, Empire filed this action seeking to foreclose on

---

[1] Daniel Muresan formed another single-member LLC, Empire NW Investments, LLC, to join PMC and own his interest in the facility.

the construction lien. Lender responded with counterclaims against Empire and third-party claims against Muresan, in which Lender sought to have the construction lien declared invalid and alleged that Builder committed fraud to obtain loan proceeds for uses unrelated to the purposes of the loan. The case was tried to the court over nine days. After hearing all the evidence, the court declared the lien invalid, which resolved Empire's lien foreclosure claim and Lender's declaratory judgment claim; found in Lender's favor on Lender's claims for fraud, breach of guaranty agreement, and contractual indemnity and awarded $625,369.00 in damages on those claims; and denied all remaining claims, counterclaims, and third-party claims. The court also ruled that Lender was entitled to attorney fees and costs on the lien foreclosure, declaratory judgment, breach of guaranty agreement, and contractual indemnity claims and, in a supplemental judgment, awarded $568,473.86 in attorney fees and costs.

## DAMAGES

Because it is dispositive, we go directly to the second assignment of error, which challenges the trial court's award of $625,369.00 in damages for fraud, breach of guaranty agreement, and contractual indemnity.

In its operative pleading, Lender alleged that Builder's fraud had caused damages "in excess of $876,231.37, consisting of $473,793.76 to resolve contractor liens, $163,610.85 for the Oregon City System Development Fees, $137,659.40 for Clackamas County Property Taxes, and $101,207.36 for road improvements."[2] Lender alleged that Builder's breach of guaranty agreement had caused damages "in excess of $2,047,170.80, consisting of $199,739.77 for holding costs, $1,108,859.06 in lost interest and fees, $163,610.85 for City of Oregon City System Development Fees, $473,753.76 to resolve contractor liens, and $101,207.36 for road improvements." And Lender alleged that Builder's breach of the contractual indemnity obligation had caused damages "in excess of $1,189,817.90, consisting of $313,586.53 in additional funds disbursed,

---

[2] The amount to resolve contractor liens likely contains a typo, as Lender elsewhere repeatedly used the number $473,753.76.

$473,753.76 to resolve contractor liens, $163,610.85 for City of Oregon City System Development Fees, $137,659.40 for Clackamas County Property Taxes, and $101,207.36 for road improvements."

On the morning of trial, Lender filed a lengthy trial memorandum that laid out its alleged damages on each claim in detail. The trial memorandum was consistent with Lender's pleading as to how and in what amounts Lender had been damaged on each claim. Lender proceeded to try to prove those alleged damages at trial.

When the trial court ruled in Lender's favor on the fraud, breach of guaranty agreement, and contractual indemnity claims, the court found that Lender had not proved the damages that it had pleaded and sought to prove, but the court nonetheless awarded damages on those claims. As to the fraud claim, the court found that Lender had proved fraud, specifically that Muresan had taken advantage of the lending relationship and used deception "to misappropriate $625,369 for spending on unrelated projects" that he "never repaid." The court accurately described Lender as seeking to recover on the fraud claim "$876,231 in damages for subcontractor liens paid, road improvement costs, SDC charges and taxes." The court was unpersuaded, however, that Lender had proved the damages that it sought:

> "[Lender] claims damages for sums paid on behalf of PMC for subcontractor liens, road improvement costs, DCS [*sic*] charges and taxes. However, [Lender] failed to establish that but for Muresan's fraudulent conduct, it would have avoided these costs. The construction of the facility took longer and cost more than planned for reasons other than Muresan's fraudulent conduct, like the level of management expertise. Empire's limited experience with projects of this scale contributed to the need for [Lender] to pay these costs directly."

The court nonetheless awarded damages on the fraud claim "in the amount of $625,369," *i.e.*, the amount of misappropriated loan funds, without further explanation.

The trial court did the same on the other claims. As to the claim for breach of guaranty agreement, the court found that Builder had breached the guaranty agreement in

various regards. The court accurately described Lender as seeking to recover on that claim "$2,997,715 in damages for holding costs, lost interest and fees, SDC charges, subcontractor liens and road improvements." The court was unpersuaded that those damages were caused by the breaches, so it did not award the requested damages, but it again awarded damages in the amount of the misappropriated funds:

> "[Lender] suffered damages in the amount of $625,369 for the sum Muresan misappropriated for unrelated projects. [Lender] was not able to prove the other amounts were attributable to Muresan's wrongful conduct as opposed to Empire's poor management. Therefore, [Lender] is entitled to recover $625,369 for the sum Muresan misappropriated for unrelated projects. *** The other damages claimed by [Lender] are denied."

Similarly, the court ruled in Lender's favor on the contractual indemnity claim, but it was unpersuaded that Lender had proved the damages that it sought on that claim—"damages in the amount of $1,189,817 for subcontractor liens, SDC charges, county taxes, additional funds paid in 2016 and road improvements"—and instead awarded damages in the amount of the misappropriated funds:

> "For the reasons explained above, [Lender] is entitled to recover $625,369 for the sum Muresan misappropriated for unrelated projects. *** The other damages claimed cannot be attributed directly to Muresan's misrepresentations and therefore are denied."

On appeal, Builder contends that the trial court erred in awarding $625,369 in damages. Builder argues that, although Muresan never repaid the misappropriated loan funds, Lender was repaid via the nonjudicial foreclosure proceedings, such that awarding damages for the misappropriated funds amounts to a double recovery. In response, Lender argues that we should reject Builder's claim of error for lack of preservation or, alternatively, conclude that the damages findings are supported by evidence in the record, as there is evidence that defendant misappropriated $625,369 in loan funds in 2015. Lender's briefing does not meaningfully address Builder's double-recovery argument, and Lender has never explained why it did not

allege the $625,369 in misappropriated funds as damages in its pleading or argue that theory of damages in its trial memorandum, if it was properly considered part of Lender's damages.

We first address preservation. Lender had the burden to prove damages on its claims, so, if Builder were claiming that the trial evidence would not have allowed an award of damages on any theory, Builder would need to have moved to dismiss for insufficient evidence under ORCP 54 B(2) to preserve that claim for appeal. *See* ORCP 54 B(2) (providing for the bench-trial equivalent of a motion for directed verdict); *Farnsworth v. Meadowland Ranches, Inc.*, 321 Or App 814, 820, 519 P3d 153 (2022) ("In a bench trial, to preserve for appeal a contention that one was entitled to prevail as a matter of law on a particular claim, the party who does *not* bear the burden of persuasion on that claim must move for directed verdict (or the like) ***." (Emphasis in original.)).

That is not what Builder is arguing though. Instead, Builder is arguing that, once the trial court sitting as factfinder rejected Lender's pleaded damages theories due to being unpersuaded on causation, it was error to nonetheless award $625,369 in damages on an unsound theory. And *that* issue was adequately preserved for appeal. Builder pointed out both in its trial memorandum and in closing argument that Lender was made whole on the loan itself in the nonjudicial foreclosure proceedings and therefore could not recover any damages on the loan itself. That was sufficient to preserve the issue, particularly when Lender's pleading and trial memorandum both made clear that Lender was not claiming the misappropriated funds themselves as damages. Moreover, the trial court acknowledged Builder's position in its letter opinion, stating, "Muresan never repaid the misappropriated funds. [Lender] exercised its right to foreclose on the property, but that decision did not release Muresan from liability for his tortious conduct."

Turning to the merits, we focus our discussion on the fraud claim, but, like the parties and the trial court, we treat all three claims the same as to the damages issue, so our analysis applies equally to the claims for breach of guaranty agreement and contractual indemnity. Whether

the trial court erred comes down to whether the court could properly award the amount of the misappropriated funds as damages to Lender or, conversely, whether it was improper to do so in light of the nonjudicial foreclosure sale. *See McLean v. Charles Ellis Realty, Inc.*, 189 Or App 417, 427, 76 P3d 661 (2003), *rev den*, 337 Or 34 (2004) ("The general rule of damages in fraud is that a plaintiff is entitled to such damages as naturally and proximately resulted from the fraud." (Internal quotation marks omitted.)). We agree with Builder that it was improper in light of the nonjudicial foreclosure sale.

Lender's loan was secured with a trust deed on the property. A trust deed is a legal instrument that is similar to a mortgage agreement but allows the trustee to sell the property more quickly in the event of default. *See* ORS 86.710 (describing trust deeds). By executing a trust deed, PMC conveyed its interest in the property to Lender in trust, to secure its performance of its obligations to Lender under the loan agreement. Builder then made legitimate draws on the loan but, unbeknownst to Lender, also fraudulently drew $625,369 for unrelated projects. When PMC later defaulted on the loan, thus failing to perform its obligations under the loan agreement, Lender initiated nonjudicial foreclosure proceedings. *See id.* (conferring "the power of sale" upon the trustee, which "may be exercised after a breach of the obligation for which the transfer is security," and allowing for judicial or nonjudicial foreclosure).

Lender acquired the property (now developed with a memory care facility) at the nonjudicial foreclosure sale with a credit bid of $4,200,000. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 US 639, 642, 132 S Ct 2065, 182 L Ed 2d 967 (2012) (explaining that "credit-bidding" is a practice by which a bank bids for property at foreclosure "using the debt it is owed to offset the purchase price"). The property was conveyed from PMC to Lender, as the highest bidder, by a trustee's deed which states that the property was sold at public auction to Lender "for the sum of $4,200,000.00, consideration being paid by the *satisfaction in full of the obligations then secured by [the trust deed] together with all fees, costs and expenses as provided by statute*." (Emphasis added.)

In its pleadings and its trial memorandum, Lender implicitly acknowledged that it was made whole on the loan itself through the nonjudicial foreclosure sale and that any damages that it suffered from Builder's conduct lay elsewhere, in additional costs and expenses that Lender otherwise would not have incurred. Lender also acknowledged that reality explicitly in at least one pretrial filing, stating in its response to Builder's Motion to Compel Production that "as [Lender] has conceded, the amount secured by the deed of trust was satisfied at the Trustee's Sale."

To the extent that the trial court may have understood an ambiguous statement in Lender's closing argument as an assertion that the misappropriated funds themselves could be considered part of Lender's damages, there was no evidence to support such a theory of damages. Lender never disputed the "satisfaction in full" statement in the trust deed from the nonjudicial foreclosure sale or put forward any evidence that the nonjudicial foreclosure sale somehow failed to make Lender whole on the loan itself. On appeal, Lender summarily argues that the $625,369 award is supported by evidence that Builder misappropriated $625,369 in loan funds. But that misses the point, because the problem with the court's award lies in the theory of damages itself, not the dollar amount. Builder's misappropriation of loan funds does not necessarily translate into *damages* to Lender in the amount of the misappropriated funds. Although Builder did not repay the $625,369 in cash, the entire loan balance was repaid through the nonjudicial foreclosure sale—and Lender offered no evidence to the contrary that would support any belated effort to introduce a new theory of damages.[3]

---

[3] If Lender had not obtained full satisfaction on the loan in the nonjudicial foreclosure proceeding, the situation would be different. But, having done so—or, at least, the only evidence being that it did so—Lender was limited to seeking consequential damages on its tort claims, which is what it alleged in its pleadings and argued in its trial memorandum. *See McLean*, 189 Or App at 428-29 (holding, in a lender's action for fraud arising out of a secured loan that the "proper measure of damages" was the difference between the loan amount and the value of the lender's security interest, along with any "consequential damages" caused by additional expenditures, and that it was error to allow evidence under a "benefit of the bargain" theory of damages); *see also, e.g.*, *Sumitomo Bank v. Taurus Developers, Inc.*, 185 Cal App 3d 211, 217-18, 229 Cal Rptr 719 (1986) (explaining that "[t]he measure of damages for a borrower's tortious acts against a secured lender is the amount of the impairment of the security, that is the amount by which the value of the security is less than the outstanding indebtedness and is

Accordingly, we conclude that the trial court erred in awarding $625,369 in damages on Lender's fraud, breach of guaranty agreement, and contractual indemnity claims. Once the court found that Lender had failed to prove its alleged damages, it was error to award damages on an unpleaded theory that lacked evidentiary support. We reverse the general judgment and remand for entry of a judgment consistent with this opinion.

### ATTORNEY FEES AND COSTS

Builder also appeals the supplemental judgment, raising various challenges to the trial court's award of attorney fees and costs to Lender. "When an appeal is taken from a judgment under ORS 19.205 to which an award of attorney fees or costs and disbursements relates[, and] the appellate court reverses the judgment, the award of attorney fees or costs and disbursements shall be deemed reversed." ORS 20.220(3)(a). The supplemental judgment is therefore reversed as well. *See PNC Multifamily Capital v. AOH-Regent Ltd. Partnership*, 262 Or App 503, 518, 329 P3d 773 (2014) ("[B]ecause the supplemental judgment awarding attorney fees was predicated on the general judgment of dismissal, we reverse that judgment as well."); *ZRZ Realty v. Beneficial Fire and Casualty Ins.*, 257 Or App 180, 186, 306 P3d 661 (2013) ("[T]he legal effect of reversing the underlying attorney fee award in the general judgment was to reverse the supplemental judgment for attorney fees as well[.]").

We note that Lender was awarded attorney fees and costs on four claims—Builder's claim for lien foreclosure, and Lender's claims for declaratory judgment, breach of guaranty agreement, and contractual indemnity—and our decision on appeal relates only to the last two claims. The trial court will therefore need to revisit its fee ruling and make a new award consistent with this opinion.

Reversed and remanded.

---

thereby rendered inadequate[,]" and that the lender's full credit bid for the property securing its loan at a nonjudicial foreclosure sale established "as a matter of law [that] its security was not impaired" (internal quotation marks omitted)).